[Cite as *State ex rel. McDermott v. Ohio Adult Parole Auth.*, 2017-Ohio-754.]

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio ex rel. John P. McDermott, | : | |
| Relator, | : | |
| v. | : | No. 16AP-208 |
| Ohio Adult Parole Authority, | : | (REGULAR CALENDAR) |
| Respondent. | : | |

---

## D E C I S I O N

### Rendered on March 2, 2017

---

**On brief:** *John P. McDermott*, pro se.

**On brief:** *Michael DeWine*, Attorney General, and *William D. Maynard*, for respondent.

---

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

LUPER SCHUSTER, J.

{¶ 1} Relator John P. McDermott, who is currently incarcerated for the murder of Karen Barnes in 1980, initiated this original action requesting that this court find that respondent Ohio Adult Parole Authority ("OAPA" or "parole board") considered incorrect information at his last parole hearing, and order OAPA to provide him a new parole hearing where he will receive meaningful review of his eligibility for parole without OAPA considering inaccurate information.

{¶ 2} This matter was referred to a magistrate of this court pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals. The magistrate issued the appended decision, including findings of fact and conclusions of law. The magistrate determined that McDermott failed to establish by clear and convincing evidence that

OAPA had considered inaccurate evidence and denied him parole based on that inaccurate evidence. Thus, the magistrate recommends this court deny McDermott's request for a writ of mandamus.

{¶ 3} McDermott has filed objections to the magistrate's decision. Therefore, we must independently review the decision to ascertain whether "the magistrate has properly determined the factual issues and appropriately applied the law." Civ.R. 53(D)(4)(d). McDermott presents six objections, which we will address in turn.

{¶ 4} McDermott's first and second objections concern the magistrate's factual findings. First, McDermott argues the magistrate failed to acknowledge that the documents he attached to his complaint were verified. This argument is unpersuasive. The magistrate did not reject McDermott's documents as not being what he purported them to be. Before the parties submitted their merit briefs, the magistrate indicated that she accepted as evidence McDermott's certified exhibits attached to his complaint. Additionally, in her decision recommending this court deny McDermott's requested writ, the magistrate stated that "[a]side from the documents relator attached as exhibits to his complaint, relator did not present any additional evidence." (Mag. Decision at ¶ 31.) Thus, the magistrate reviewed the substance of McDermott's submitted documents to determine whether they provide clear and convincing evidence that OAPA considered inaccurate evidence at McDermott's parole hearing and denied him parole based on that inaccurate evidence. Consequently, we reject McDermott's assertion that the magistrate did not duly consider the documents he attached to his complaint. McDermott's first objection is overruled.

{¶ 5} Second, McDermott asserts that the magistrate's eleventh finding of fact erroneously states that he filed a motion on July 20, 2016, and that he asserted that OAPA "took * * * action on [a protection order] in 2009." (Relator's Objs. at 3.) The magistrate's eleventh finding of fact states: "On June 6 and July 20, 2016, relator filed a motion for production of documents asserting that respondent has proof there was no restraining order filed against relator, and further asserted that, in 2009, respondent used this document, and reconsidered his 2000 parole hearing." (Mag. Decision at ¶ 32.) McDermott contends that he filed a single motion for document production, and that he filed that motion on June 6, 2016. We find that the record supports McDermott's

assertion that he filed his motion for document production only on June 6, 2016. Thus, we agree that the magistrate's decision mistakenly indicates that McDermott filed his motion for document production on both June 6 and July 20, 2016.

{¶ 6} McDermott's other challenge to the magistrate's eleventh finding of fact relates to OAPA's alleged receipt of a court document establishing there was no protection order filed against him. McDermott's June 6, 2016 motion for document production stated that since approximately May 2000, OAPA has been in possession of a court document establishing there was no protection order filed against him. He further stated that "upon [OAPA's] initial receipt of the document," OAPA reconsidered its March 2000 parole hearing decision. (June 6, 2016 Relator's Mot. to Order Production of Document at 1.) Thus, we agree with McDermott's contention that his motion asserted that OAPA reconsidered the March 2000 parole hearing decision in 2000 and not 2009 as indicated in the magistrate's decision. While we acknowledge these clerical mistakes in the magistrate's eleventh finding of fact, they were inconsequential to the magistrate's analysis.[1] Accordingly, we overrule McDermott's second objection.

{¶ 7} McDermott's third and fourth objections are related. McDermott argues in his third objection that there was no factual or legal basis for the magistrate to deny his request for document production. McDermott's fourth objection challenges the magistrate's conclusion that he has not shown that OAPA considered inaccurate evidence and denied him parole based on that inaccurate evidence. In support of his fourth objection, McDermott reasons that his inability to meet that burden was due to the magistrate erroneously denying his request for document production. Thus, McDermott's fourth objection is essentially premised on the merits of his third objection.

{¶ 8} We find that the magistrate did not err in denying McDermott's June 6, 2016 motion for document production. On May 5, 2016, the magistrate ordered the parties, in the absence of either party filing a motion for conference within ten days of the filing of the order, to submit their stipulated or certified evidence on or before May 24, 2016. On May 13, 2016, McDermott requested a conference. Five days later, the

---

[1] Although not raised as an error by McDermott, we note that page ten of the magistrate's decision mistakenly refers to a "practice order issue" instead of "protection order issue." This additional clerical error is so corrected.

magistrate denied McDermott's request for a conference. McDermott did not move this court to set aside the magistrate's order denying his request for a conference. *See* Civ.R. 53(D)(2)(b) ("Any party may file a motion with the court to set aside a magistrate's order. The motion shall state the moving party's reasons with particularity and shall be filed not later than ten days after the magistrate's order is filed."). On May 23, 2016, OAPA requested an extension of time until June 2, 2016 to submit evidence. The magistrate granted OAPA's request for an extension. McDermott did not, however, file any request for an extension regarding the evidentiary submission deadline. Despite the expiration of the evidentiary submission deadline, McDermott filed his request for document production together with his merit brief on June 6, 2016.

{¶ 9} Furthermore, even assuming McDermott could submit a court document in this case indicating there was no protection order in place at the time of the murder, he would not be entitled to his requested writ. Under *State ex rel. Keith v. Ohio Adult Parole Auth.*, 141 Ohio St.3d 375, 2014-Ohio-4270, OAPA may not deny parole based on its reliance on information that it knows or has reason to know is inaccurate. *Id.* Here, OAPA's decision for denying McDermott parole at his most recent parole hearing in 2015 does not reference a protection order or stalking, and McDermott has not presented any other evidence indicating that OAPA denied him parole in 2015 on that basis.

{¶ 10} For these reasons, we find the magistrate did not err in denying McDermott's motion for document production. Consequently, we further reject McDermott's assertion that he was unable to meet his evidentiary burden in this case because the magistrate erroneously denied his motion for document production.

{¶ 11} Accordingly, we overrule McDermott's third and fourth objections.

{¶ 12} In his fifth objection, McDermott contends that the magistrate failed to discuss his assertion that OAPA presented false information to the General Assembly regarding his case. He argues the magistrate erred in not acknowledging that OAPA falsely reported to the General Assembly that he violated a protection order when he went to the victim's residence and murdered her. We disagree.

{¶ 13} Effective September 30, 2011, uncodified section 10 of 2011 Am.Sub.H.B. No. 86 required the Ohio Department of Rehabilitation and Correction ("ODRC") to review the cases of all parole-eligible inmates who were age 65 years or older and who

already had a statutory first parole consideration hearing.  Upon completion of the review, ODRC was required to provide a report to the leadership of the General Assembly summarizing the findings of its review and explaining why each inmate had not been paroled.

{¶ 14}  McDermott attached to his complaint what appear to be pages from ODRC's December 2011 report to the General Assembly submitted pursuant to uncodified section 10 of 2011 Am.Sub.H.B. No. 86.  In the report, ODRC explained why OAPA deemed McDermott unsuitable for release in 2009, noting in part that his "conviction involved him violating a protection order by going to his ex-wife's home and stabbing her to death while her two young children were in the home.  The victim suffered approximately 30 stab wounds."  (Dec. 30, 2011 ODRC Report at 41.)  According to McDermott, the magistrate should have acknowledged that the report contained incorrect information regarding the existence of a protection order against him when he murdered the victim. However, in McDermott's petition for a writ of mandamus, he requests an order directing OAPA to provide him with a new parole hearing.  His petition does not seek a writ requiring ODRC to deliver a new or amended report to the General Assembly concerning his 2009 parole denial.  Furthermore, in objecting to the magistrate's decision, McDermott does not explain why the existence of allegedly inaccurate information in ODRC's 2011 report to the General Assembly regarding his 2009 parole denial entitles him to a writ requiring OAPA to provide him a new parole hearing.  Instead, he simply argues that the magistrate should have referenced the allegedly inaccurate information in the report to ensure a complete record for the purpose of appeal.

{¶ 15}  For these reasons, McDermott's fifth objection is overruled.

{¶ 16}  Finally, McDermott's sixth objection is a general challenge to the magistrate's recommendation to deny the requested writ of mandamus.  McDermott states that this objection is entirely based on the arguments he has presented in support of his other objections.  For the reasons stated above regarding McDermott's other objections, we overrule his sixth objection.

{¶ 17}  Following our independent review of the record pursuant to Civ.R. 53, we find the magistrate correctly determined that McDermott is not entitled to the requested writ of mandamus.  The magistrate properly determined the facts and applied the

pertinent law to the salient facts.  Therefore, we adopt the magistrate's decision as our own, including the findings of fact (with the clerical corrections noted above) and conclusions of law contained therein.  Accordingly, we overrule McDermott's objections to the magistrate's decision and deny his request for a writ of mandamus.

*Objections overruled;*
*writ of mandamus denied.*

BROWN and SADLER, JJ., concur.

APPENDIX

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio ex rel. John P. McDermott,    :

            Relator,    :

v.    :    No. 16AP-208

Ohio Adult Parole Authority,    :    (REGULAR CALENDAR)

            Respondent.    :

MAGISTRATE'S DECISION

Rendered on September 14, 2016

*John P. McDermott,* pro se.

*Michael DeWine,* Attorney General, and *William D. Maynard,* for respondent.

IN MANDAMUS

{¶ 18} Relator, John P. McDermott, filed this original action asking this court to find that respondent, Ohio Adult Parole Authority ("OAPA" or "parole board") considered incorrect information at his last parole hearing, and order respondent to provide him a new parole hearing where he will receive meaningful review of his eligibility for parole without OAPA considering the inaccurate information.

Findings of Fact:

{¶ 19} 1. Relator is an inmate currently incarcerated at Grafton Correctional Institution where he is serving a sentence of 15 years to life for the murder of Karen Barnes.

{¶ 20} 2. Relator has been considered for parole on several occasions; however, on each occasion, parole has been denied.

{¶ 21} 3. According to his complaint, the parole board began considering incorrect information as early as 1995.  Relator asserts that the parole board has considered the following incorrect information:  (1) "In March, 1995, following the 60-month continuance imposed in 1990, the 'seizure defense' was again raised;" (2) "In March, 2000, following the completion of the second 60-month continuance, Parole Board Member Larry Matthews created a non-existant [sic] 'violation of a protective order while committing the offense' falsehood;" (3) "On April 9, 2009, following the completion of the most recent 36-month continuance and referral to COBR, Petitioner was continued for an additional 36 months based on the written reason of 'nature of the offense' and the spoken reason of the 'seizure defense' and an assertion that the Petitioner did not 'accept responsibility;' " (4) "On May 15, 2012, Petitioner's parole was rescinded based upon a clear error of fact, the asserted claim 'The Board finds aggravating the well documented history of stalking, violence and threats toward the victim...;' (5) "During the May 15, 2012, hearing, the panel again raised the 'seizure defense' claiming that Petitioner 'lacks remorse' and again raised the false specter of non-existent protective orders, as well as considering a manila envelope consisting of unidentified documents which were not disclosed to counsel or to Petitioner;" and (6) "On August 3, 2015, * * * he was again referred to COBR which, on August 14, 2015, imposed yet another continuance of 36 months based upon the written statement that Petitioner, now over seventy years of age, had forgotten some of the details of the programming he had taken a decade ago, and thus 'lacks insight from said programming.' "

{¶ 22} 4. Aside from his own statements as to what he remembers parole board members saying, relator has presented very little evidence in support of his allegations that the parole board is considering inaccurate information when it denies him parole. With regard to the March 2000 hearing, relator has attached what appears to be records from OAPA dated March 15, 2000.  Pursuant to this document, one board member recommended:

> [One] range departure to 240 [to] 300 months based on inmate violating a protection order, and murdering the victim while her [two] children were in the residence. Inmate indicated that he had a seizure attack and don't [sic] remember stabbing the victim. This was a heinous crime in which the victim was stabbed 30 times.

{¶ 23} 5. Concerning the April 2009 hearing, relator has again attached what appears to be copies of parole board forms. Relator asserts that the parole board specifically considered the seizure defense and the assertion that he did not accept responsibility. However, upon review of the documents relator has attached from his 2009 hearing, the magistrate finds no reference to a seizure disorder.

{¶ 24} 6. Regarding the May 2012 hearing, relator has submitted two documents. The first is the Wednesday, April 4, 2012 letter from the Ohio Department of Rehabilitation and Correction notifying him that a majority of the parole board members had voted to propose parole in his case, but that decision was deferred until the Office of Victims Services determined whether the victim or victim's representative wished to petition for a full board hearing which was scheduled for May 15, 2012. Relator also submitted copies of what appeared to be from the parole board dated May 15, 2012. That document specifically states:

> Board finds aggravating the well-documented history of stalking, violence and threats toward the victim that suggests an inability to control his behavior, and a lack of acknowledgement of this history through his failure to sufficiently address it.

{¶ 25} 7. On March 21, 2016, relator filed this petition for a writ of mandamus. As noted in the opening paragraph, relator alleges that he has not been granted meaningful review because the parole board is considering and basing its denials of parole, in part, on inaccurate information. Relator asks this court to order the parole board to refrain from considering the information he asserts is inaccurate and ordering the board to provide him with a new parole hearing.

{¶ 26} 8. Having met the filing requirements, the magistrate put on a briefing order.

{¶ 27} 9. Respondent filed documents which have been verified. This evidence includes the decision and minutes from the August 14, 2015 parole board hearing which corroborate relator's assertion that it was specifically noted that "[h]e has completed programming, but lacks insight from said programming."

{¶ 28} Respondent's evidence also includes a letter dated June 17, 2015 from relator directed to the parole board. In that letter, relator set out his assertion that the parole board was considering erroneous or inaccurate information. He also asserts that at various times, certain parole board members have told him that they would vote in favor of him being released on parole at the next hearing.

{¶ 29} Respondent has also submitted numerous documents which appear to have been prepared in light of his August 2015 hearing and include letters from family and relator's plans in the event that he is granted parole.

{¶ 30} Respondent's evidence also includes several letters from both relator and an assistant public defender addressed to certain public officials, as well as their replies. In those letters, relator continued to assert that inaccurate information was being used to deny him parole and asking the parole board to reconsider its decision to deny him parole.

{¶ 31} 10. Aside from the documents relator attached as exhibits to his complaint, relator did not present any additional evidence.

{¶ 32} 11. On June 6 and July 20, 2016, relator filed a motion for production of documents asserting that respondent has proof there was no restraining order filed against relator, and further asserted that, in 2009, respondent used this document, and reconsidered his 2000 parole hearing.

{¶ 33} 12. On September 12, 2016, the magistrate denied relator's motions.

{¶ 34} 13. The matter has been fully briefed and is submitted on the magistrate's docket for consideration.

Conclusions of Law:

{¶ 35} For the reasons that follow, it is this magistrate's decision that this court should deny relator's request for a writ of mandamus.

{¶ 36} The Supreme Court of Ohio has set forth three requirements which must be met in establishing a right to a writ of mandamus: (1) that relator has a clear legal right to the relief prayed for; (2) that respondent is under a clear legal duty to perform the act requested; and (3) that relator has no plain and adequate remedy in the ordinary course of the law. *State ex rel. Berger v. McMonagle*, 6 Ohio St.3d 28 (1983).

{¶ 37} The appropriate standard of proof in mandamus cases is proof by clear and convincing evidence. *See State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967).

{¶ 38} Relator relies on the Supreme Court of Ohio's decision in *State ex rel. Keith v. Ohio Adult Parole Auth.,* 141 Ohio St.3d 375, 2014-Ohio-4270, to assert that he has a clear legal right to a meaningful parole consideration hearing based upon correct information, that respondent has a corresponding clear legal duty to correct errors and falsehoods from his record, and conduct a new hearing without consideration of false information. In that case, Bernard R. Keith, an inmate, requested a writ of mandamus ordering OAPA and Cynthia Mausser, former Chair of the Ohio Parole Board, to correct erroneous information in his records. In determining that a writ of mandamus should issue, the *Keith* court explained:

> A prisoner has no constitutional or statutory right to parole. *State ex rel. Henderson v. Ohio Dept. of Rehab. & Corr.,* 81 Ohio St.3d 267, 268, 1998 Ohio 631, 690 N.E.2d 887 (1998). Because there is no such right, a prisoner who is denied parole is not deprived of liberty as long as state law makes the parole decision discretionary. *Id.* at 125. Under R.C. 2967.03, the parole decision in Ohio is discretionary. *Id.* And we have held that because a potential parolee was not deprived of life, liberty, or property by being denied parole, he could not invoke due process to challenge his allegedly inaccurate scoresheet. *State ex rel. Hattie v. Goldhardt,* 69 Ohio St.3d 123, 126, 1994 Ohio 81, 630 N.E.2d 696 (1994). Therefore, relying upon that authority, the court of appeals was not unreasonable in concluding that the parole board had no clear legal duty to correct Keith's records. *Id.*
>
> Keith cites *Layne v. Ohio Adult Parole Auth.,* 97 Ohio St.3d 456, 2002-Ohio-6719, 780 N.E.2d 548, to support his argument that he has a right to a corrected record. In that case, the OAPA used a formula for projecting an inmate's

earliest possible release on parole. The formula relied on two numbers, one of which reflected the inmate's "offense category score." The inmates in Layne had been assigned incorrect offense category scores, resulting in potential release dates that were substantially later than the dates that would have resulted from the correct scores. We held that by assigning each inmate a score corresponding to an offense more serious than the offense for which he was actually convicted, the OAPA breached the state's plea agreement with the inmate. *Id.* at ¶ 25.

While none of the errors alleged here breached a plea agreement as they did in *Layne, Layne* establishes a minimal standard for the OAPA, that is, that statutory language "ought to mean something." *Id.* at ¶ 27. At issue in *Layne* were the words "eligible for parole" in former R.C. 2967.13(A). We held there that inherent in the language is "the expectation that a criminal offender will receive meaningful consideration for parole." *Id.*

Here, the language at issue involves the procedures relating to parole of a prisoner. The regulation setting forth the procedure for parole requires that in deciding on release of an inmate, the parole board is to consider numerous factors, including:

(1) Any reports prepared by any institutional staff member relating to the inmate's personality, social history, and adjustment to institutional programs and assignments;

(2) Any official report of the inmate's prior criminal record, including a report or record of earlier probation or parole;

(3) Any presentence or postsentence report;

(4) Any recommendations regarding the inmate's release made at the time of sentencing or at any time thereafter by the sentencing judge, presiding judge, prosecuting attorney, or defense counsel and any information received from a victim or a victim's representative;

(5) Any reports of physical, mental or psychiatric examination of the inmate;

(6) Such other relevant written information concerning the inmate as may be reasonably available, except that no

document related to the filing of a grievance under rule 5120-9-31 of the Administrative Code shall be considered;

(7) Written or oral statements by the inmate, other than grievances filed under rule 5120-9-31 of the Administrative Code.

Ohio Adm.Code 5120:1-1-07(B). As in *Layne,* this language "ought to mean something."

Inherent in the language of Ohio Adm.Code 5120:1-1-07(B) is that the board must consider various reports and "other relevant written information" pertaining to the inmate whose parole is being considered. The existence of this formal process for considering parole rightly gives parolees some expectation that they are to be judged on *their own* substantively correct reports. Requiring the board to consider specific factors to determine the parolee's fitness for release would not mean anything if the board is permitted to rely on incorrect, and therefore irrelevant, information about a particular candidate.

Our decision today does not overrule the holding in *Henderson,* 81 Ohio St.3d 267, 1998 Ohio 631, 690 N.E.2d 887, and similar cases. Keith and other prisoners still have "no constitutional or statutory right to parole." *Id.* at 268. *See also State ex rel. Seikbert v. Wilkinson,* 69 Ohio St.3d 489, 490, 1994 Ohio 39, 633 N.E.2d 1128 (1994). A state may set up a parole system, but it has no duty to do so. *Greenholtz v. Inmates of Nebraska Penal & Corr. Complex,* 442 U.S. 1, 7, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979). Having established a parole system, the state may design that system to be entirely discretionary, and the state "may be specific or general in defining the conditions for release and the factors that should be considered by the parole authority." *Id.* at 8. Moreover, there need be no "prescribed or defined combination of facts which, if shown, would mandate release on parole." *Id.* As mentioned above, Ohio's system is entirely discretionary and creates no expectation of parole and no due-process right to parole itself.

However, having set up the system and defined at least some of the factors to be considered in the parole decision, the state has created a minimal due-process expectation that the factors considered at a parole hearing are to be as described in the statute or rule and are to actually and accurately pertain to the prisoner whose parole is being considered.

We recognize that the OAPA's discretion in parole matters is wide-ranging. *Layne,* 97 Ohio St.3d 456, 2002-Ohio-6719, 780 N.E.2d 548, ¶ 28, citing *State ex rel. Lipschutz v. Shoemaker,* 49 Ohio St.3d 88, 90, 551 N.E.2d 160 (1990). R.C. 2967.03 vests discretion in OAPA to "grant a parole to any prisoner for whom parole is authorized, if in its judgment there is reasonable ground to believe that * * * paroling the prisoner would further the interests of justice and be consistent with the welfare and security of society." However, as in *Layne,* that discretion must yield to statutory or regulatory requirements. Therefore, we hold that in any parole determination involving indeterminate sentencing, the OAPA may not rely on information that it knows or has reason to know is inaccurate.

This is not to say that the OAPA must conduct an extensive investigation on the information it reviews for every prisoner to ensure accuracy, nor does it mean that the OAPA must credit every unsupported allegation by a prisoner that the information is inaccurate.

But where there are credible allegations, supported by evidence, that the materials relied on at a parole hearing were substantively inaccurate, the OAPA has an obligation to investigate and correct any significant errors in the record of the prisoner.

*Id.* at 378-80.

{¶ 39} Pursuant to the decision in *Keith,* the magistrate must consider whether relator has made a showing that there may be substantive errors in his record that may influence OAPA's consideration of his parole. The magistrate finds that relator has not made that showing.

{¶ 40} First, relator argues that the parole board erroneously considered a seizure defense which corresponds to relator's unwillingness to accept responsibility for his actions. As noted in the findings of fact, relator did not present evidence that this seizure defense was ever considered in denying him parole. However, the United States Court of Appeals, Sixth Circuit, released a decision on December 4, 1986 in *McDermott v. E.P. Perini,* 811 F.2d 606 (6th Cir.1986), denying relator's request for a writ of habeas corpus. The court's decision includes the following relevant information:

The evidence showed that petitioner regularly visited the victim, Karen Barnes, at her apartment. On the afternoon of November 4, 1980, when petitioner arrived at the apartment, Ms. Barnes was not yet home from work, although her two children, Greg, age eleven, and Steven, age eight, were already home from school. Ms. Barnes arrived around 5:00 p.m.

At 11:00 p.m., Greg was awakened in his upstairs bedroom by the telephone, which rang six times; no one answered it. Greg heard petitioner and Ms. Barnes arguing downstairs. Ms. Barnes was yelling about petitioner's going through her personal things. Greg then heard his mother call for him. Greg went to the landing and observed petitioner stabbing Ms. Barnes. Petitioner ran upstairs and ordered Greg to get in bed. Petitioner then went into the bathroom and washed his hands. He then went back downstairs, but returned upstairs shortly to Ms. Barnes' bedroom, where he disconnected the telephone. Petitioner went downstairs again, turned the television on with the volume on high, and exited the apartment. After about fifteen minutes, Greg and Steven went downstairs and found their mother dead in the kitchen. Greg then went to a neighbor's house, and the police were notified.

When the police arrived, they discovered on the wall next to the victim's body a knife rack with two knives, although there were spaces for three. The murder weapon was not in the apartment. The third knife, which was the murder weapon, was later found in a nearby river. An autopsy revealed at least thirty stab wounds.

Petitioner's pleas of not guilty and not guilty by reason of insanity were based upon the same medical defense, viz., that the murder was the result of petitioner's suffering a psychomotor seizure as a result of a brain disease known as psychomotor epilepsy. Petitioner presented a great deal of medical evidence in support of his theory. It is sufficient to note for the present purposes that evidence was adduced that petitioner had suffered from psychomotor epilepsy for a period of years prior to the murder, that he was suffering from a seizure at the time of the murder, and that, consequently, petitioner was unable to make a distinction between right and wrong or to control his behavior; i.e., petitioner's actions were involuntary.

> The jury rejected petitioner's insanity defense and returned a verdict of guilty.

*Id.* at 2-4.

{¶ 41} To the extent that relator argues that the parole board is incorrectly considering a seizure disorder defense and relator's failure to acknowledge his wrong doing, the above language from the court's decision indicates that, at trial, relator alleged that he was experiencing a seizure at the time he stabbed Karen Barnes 30 times, and that he was unable to control his actions.  The magistrate specifically finds that this is not erroneous information and the parole board may consider it in determining whether or not relator should be released on parole.

{¶ 42} Concerning relator's allegation that the parole board incorrectly noted that there was a protective order in place at the time he murdered Barnes, relator asserts that he presented evidence that no such protective order exists.  However, the magistrate finds that the documents relator attached to his complaint do not prove that there was not a protective order in place at the time he murdered Barnes.

{¶ 43} Specifically, the magistrate points to Appendix M of the attachment to relator's complaint.  This is a letter from the Chardon Municipal Court which provides:

> In response to your letter inquiring about information on a protection order on case number 80 C 1168, our court has found nothing. However, that case number given indicates that it would be found in Court of Common Pleas.  You would need to contact their office to request that information.

{¶ 44} The magistrate finds that this document does not prove that there was not a protective order in place at the time he murdered Barnes.  Relator had been instructed to address his request to the common pleas court.  Relator has failed to present any evidence that he did so and the magistrate finds that he has not established by clear and convincing evidence that there was no protective order in place.  To the extent that relator filed a motion and asserted that respondent has documentation that there was no protective order, relator also stated that respondent already reconsidered the 2000 decision to deny him parole and, if relator is correct in asserting this, then, to the extent

he is correct, the practice order issue was not considered in 2012 when he was last denied parole.

{¶ 45} Lastly, relator asserts that the parole board relied on information that he had been stalking Barnes before he murdered her.  Relator did attach information from the parole board which would indicate that, in 2015, the board discussed relator's well-documented history of stalking.  In support of his assertion, relator submitted as part of Appendix M to his complaint the November 10, 2015 letter from Victoria Godfrey, pre-trial release officer for the Chardon Municipal Court which provides as follows:

> Per your request on October 30, 2015 I went ahead and researched any and all cases regarding you in the Chardon Municipal Court. I was unable to find any charges involving Stalking in our court docket or records during the years of 1979 and 1980.

{¶ 46} Chardon Municipal Court provides a website to assist victims in obtaining various protection orders.  A temporary protection order is available in the Chardon Municipal Court when a criminal complaint alleging violence has been filed.  A civil protective order ("CPO") is available through the common pleas court and no criminal charges need to be filed in order to obtain a CPO.  A civil stalking or sexually oriented offense protection order is available in the common pleas court in the county in which the victim resides and does not require the filing of criminal charges.  The fact that relator submitted evidence that no stalking charges had been filed against him in the Chardon Municipal Court does not constitute clear and convincing evidence that no stalking charges had been filed against him.  As above indicated, a civil stalking protection order is available in the common pleas court.  Relator has presented no evidence from the Geauga County Court of Common Pleas which would indicate that stalking had not been involved.

{¶ 47} Contrary to relator's arguments, he is not able to establish by clear and convincing evidence that OAPA is considering inaccurate evidence and denying him parole based on that inaccurate evidence.  Relator did allege at trial that he suffered from a seizure disorder and was therefore not responsible for killing Barnes and relator did not present evidence from Geauga County Court of Common Pleas to support his assertion that there were no protective orders issued and that there had been no

allegations of stalking.  Based on the foregoing, it is this magistrate's decision that relator has not demonstrated that OAPA has abused its discretion, and this court should deny his request for a writ of mandamus.


/S/ MAGISTRATE
STEPHANIE BISCA


## NOTICE TO THE PARTIES

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).