[Cite as *State ex rel. Cobb v. Ohio Adult Parole Auth.*, 2017-Ohio-1170.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The State ex rel. Michael Cobb, | : | |
| Relator, | : | |
| v. | : | No. 16AP-199 |
| Ohio Adult Parole Authority and | : | (REGULAR CALENDAR) |
| Andre Imbrogno, | | |
| Chair of the Ohio Parole Board, | : | |
| Respondents. | : | |

D E C I S I O N

Rendered on March 30, 2017]\

*Michael Cobb,* pro se.

*Michael DeWine,* Attorney General, and *B. Alexander Kennedy,* for respondents.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

SADLER, J.

{¶ 1} Relator, Michael Cobb, commenced this original action requesting a writ of mandamus ordering respondents, Ohio Adult Parole Authority ("OAPA") and Andre Imbrogno, Chair of the Ohio Parole Board, to correct allegedly inaccurate information in his parole hearing file and provide him with a new parole board hearing.

{¶ 2} Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate who issued the appended decision, including findings of fact and conclusions of law. The magistrate recommended that this court grant summary judgment in favor of respondents and deny relator's requested writ of mandamus. For the following reasons, we overrule relator's first and second objections and sustain his third objection. As a result, we deny the requested writ.

## I.  FACTS AND PROCEDURAL HISTORY

{¶ 3}    The following facts are undisputed.  Relator is currently incarcerated at the Richland Correctional Institution where he is serving a sentence of 18 years to life after pleading guilty to robbery and murder with a gun specification.  On June 11, 2015, relator appeared before the parole board for his first release consideration hearing.  The parole board denied relator's release.

{¶ 4}    The parole board's decision and minutes dated June 19, 2015 indicate that the board considered mandatory factors in Ohio Adm.Code 5120:1-1-07 and found substantial reason to believe that due to the serious nature of the crime, the release of relator into society would create undue risk to public safety or would not further the interest of justice or be consistent with the welfare and security of society.  The parole board additionally found that there was substantial reason to believe that due to serious infractions of Ohio Adm.Code 5120-9-06, relator's release would not act as a deterrent to the inmate or other institutionalized inmates from violating institutional rules.  The parole board's rationale states:

> The Board by way of a Majority Vote has determined that a release at this time would demean the serious nature of this crime. The male victim in this offense was shot in the back by the offender and was then robbed of his property that was on his person. While the Board does find that the offender has good insight into his crime and did display remorse for his actions, they remain concerned about the inmate's problematic conduct. He is encouraged to continue to complete risk relevant programming and work on not receiving any future conduct reports.

(Ohio Parole Board Decision and Minutes at 1.)

{¶ 5}    The aggregate sentence listed on the parole board's decision and minutes is "15-life + 3 gun cc/w/ 5 years."  (Ohio Parole Board Decision and Minutes at 1.)  The parole board set the next parole hearing date for June 1, 2020. Relator filed a motion for reconsideration dated January 17, 2016, which the parole board denied on January 29, 2016.

{¶ 6}    On March 18, 2016, relator filed a complaint for a writ of mandamus to "correct the false and inaccurate information" in his parole file and provide relator with a new parole hearing.  (Compl. for Writ of Mandamus at 11.)  The complaint alleges five

errors: (1) the parole board improperly considered that relator and his father physically assaulted the victim prior to shooting and robbing the victim; (2) the parole board information sheet and 2014 clemency minutes state that relator's aggregated sentence is 23 to life instead of 18 to life; (3) the parole board decision references relator's "problematic conduct" when, at the hearing, parole board member Kathleen Kovach verbally commended relator for his institutional good behavior; (4) that the parole board asked about a juvenile felonious assault "conviction" by the board, when he only had been charged with felonious assault as a juvenile and that complaint was dismissed; and (5) he was verbally informed at the parole hearing that a transfer document showed he was transferred from the Lorain Correctional Institution for "failure to adjust" at a level 3 institution.  (Compl. for Writ of Mandamus at 5, 6.)  Appellant asserted that he was entitled to the writ of mandamus pursuant to *State ex rel. Keith v. Ohio Adult Parole Auth.*, 141 Ohio St.3d 375, 2014-Ohio-4270.

{¶ 7}  On May 3, 2016, respondents filed a motion to dismiss.  On May 31, 2016, relator filed a brief in opposition to respondents' motion to dismiss, and respondents filed a reply.  On August 17, 2016, the magistrate converted respondents' motion to dismiss into a motion for summary judgment and set it for submission on September 7, 2016.  On August 25, 2016, respondents filed a motion to set aside the magistrate's order.  On September 1, 2016, relator filed a reply to respondents' converted motion for summary judgment.

{¶ 8}  On September 27, 2016, the magistrate denied respondents' motion to set aside the order converting respondents' motion to a motion for summary judgment, and, in a separate decision, addressed the merits of that motion.  The magistrate addressed each of relator's five alleged errors and concluded that relator had not made the requisite showing under *Keith* that there are credible allegations, supported by evidence, that the material relied on at his parole hearing were substantively inaccurate. As such, the magistrate determined that this court should grant summary judgment in favor of respondents and deny relator's request for a writ of mandamus.

## II. OBJECTIONS

{¶ 9}  Relator sets forth the following three objections:

> [1.] The Magistrate's decision denying Relator's Writ of Mandamus is Contrary to the Ohio Supreme Court's decision

in State *Ex rel. Keith, v. Ohio Adult Parole Authority, 141 Ohio St.3d 375; 2014-Ohio-4270; 24 N.E.3d 1132; 2014 Ohio LEXIS 2516.*

[2.] The Magistrate's decision erroneously grants Respondents motion for summary judgment, contrary to well establish law pertaining to the grant of summary judgments.

[3.] The Magistrate's Decision erroneously failed to consider Relator's timely filed evidence and Reply Brief to Respondents converted motion to dismiss into one for summary judgment.

(Sic passim.)

## III. DISCUSSION

{¶ 10} For ease of discussion, we will address relator's third objection at the outset. In his third objection, relator contends that the magistrate issued findings of fact and conclusions of law without considering his reply brief and attachments filed on September 1, 2016. The magistrate's order converting respondents' motion to dismiss into a motion for summary judgment allowed briefing through September 7, 2016. As such, respondents' reply brief was proper and timely, but the magistrate's decision does not reference respondents' reply brief and attachments in the findings of fact or conclusions of law. Accordingly, we sustain relator's third objection to the magistrate's decision and consider relator's reply brief in resolving relator's remaining objections.

{¶ 11} Because relator's remaining objections involve the ultimate determination of whether a clear legal right to relief exists pursuant to *Keith*, we will address the objections together. Specifically, relator's first objection to the magistrate's decision asks us to review the ultimate conclusion of the magistrate to deny the writ as contrary to the Supreme Court of Ohio's decision in *Keith*. Relator's second assignment of error challenges the magistrate's decision to grant summary judgment to respondents on essentially procedural grounds. According to relator, respondents did not provide any verified evidence permitted by Civ.R. 56 and did not meet their initial burden under the established summary judgment standard of review. We disagree.

{¶ 12} Summary judgment procedure applies to an action in mandamus. *State ex rel. Wilson v. Preston*, 173 Ohio St. 203 (1962), paragraph three of the syllabus. Under

Civ.R. 56(B), a defending party may move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part of the claim. Furthermore, as described in *Hartman v. Dept. of Transp.*, 10th Dist. No. 16AP-222, 2016-Ohio-5208, ¶ 15, quoting *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996):

> [A] party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party.

"[S]ome *evidence* of the type listed in Civ.R. 56(C)" includes pointing to information in the pleadings. (Emphasis sic.) *Dresher* at 293, 297-98 (noting that "summary judgment may be rendered where *the pleadings* and the arguments of the party seeking summary judgment clearly establish that the nonmoving party has no legally cognizable cause of action"). Summary judgment is appropriate when the movant demonstrates that: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, said party being entitled to have the evidence construed most strongly in his favor. *State ex rel. Nelson v. Ohio Adult Parole Auth.*, 10th Dist. No. 09AP-940, 2010-Ohio-4994, ¶ 21.

{¶ 13} Summary judgment in favor of OAPA in the context of a mandamus action is proper where undisputed evidence, viewed strongly in relator's favor, fails to meet the

standard for mandamus as a matter of law. *State ex rel. Foster v. Ohio State Adult Parole Auth.*, 10th Dist. No. 91AP-1109 (Aug. 6, 1992). To be entitled to a writ of mandamus, relator must show by clear and convincing evidence that: (1) relator has a clear legal right to the relief requested; (2) the parole board has a clear legal duty to perform the act sought; and (3) that relator has no plain and adequate remedy in the ordinary course of law. *State ex rel. Townsend v. Mohr*, 10th Dist. No. 15AP-681, 2016-Ohio-5942, ¶ 5.

{¶ 14} As discussed previously, relator's legal argument that he has a clear legal right to the relief requested and the parole board has a clear legal duty to perform is based on *Keith*. *Keith* holds that "in any parole determination involving indeterminate sentencing, the OAPA may not rely on information that it knows or has reason to know is inaccurate." *Id.* at ¶ 26. Thus, under *Keith*, "where there are credible allegations, supported by evidence, that the material relied on at a parole hearing were substantively inaccurate, the OAPA has an obligation to investigate and correct any significant errors in the record of the prisoner." *Id.* at ¶ 28.

{¶ 15} This court considered application of *Keith* in two recent opinions. In *State ex rel. Townsend v. Mohr*, 10th Dist. No. 15AP-681, 2016-Ohio-5942, ¶ 8, 30-37, we adopted the magistrate's recommendation to deny relator's request for writ of mandamus where the evidence did not show or suggest the parole board was misinformed when it rendered its decision to deny parole. Likewise, in *State ex rel. McDermott v. Ohio Adult Parole Auth.*, 10th Dist. No. 16AP-208, 2017-Ohio-754, ¶ 9, we noted that where the OAPA's written decision for denying a prisoner parole does not reference the alleged inaccurate information and the prisoner seeking mandamus has not presented other evidence indicating OAPA denied him parole on that basis, the prisoner is not entitled to his requested writ of mandamus.

{¶ 16} Here, respondents, in their converted motion for summary judgment, pointed to multiple exhibits attached to relator's mandamus complaint to show that the facts applied under *Keith* do not afford relator entitlement to mandamus as a matter of law. We find this showing meets respondents' initial burden under *Dresher*.

{¶ 17} Furthermore, construing the evidence strongly in relator's favor, we find no evidence of a substantive inaccuracy that may have influenced the OAPA's consideration of his parole. The parole decision and minutes reflects the proper

sentence and does not include in its rationale allegedly inaccurate information such as relator allegedly assaulting the victim prior to shooting him or any purported juvenile conviction or prison transfer. While the parole decision and minutes do reference "problematic conduct," relator argues that this statement is inaccurate based on his recollection of being commended for good institutional behavior during the parole hearing and his job history sheet. (Ohio Parole Board Decision and Minutes at 1.) As discussed by the magistrate, relator cannot demonstrate this statement was made at the hearing and neither this alleged commendation or his job history sheet prove that the problematic conduct statement is inaccurate, particularly in light of the rationale of the parole decision encouraging relator to "continue to complete risk relevant programming and work on not receiving any future conduct reports." (Ohio Parole Board Decision and Minutes at 1.)

{¶ 18} Therefore, we find that, pursuant to *Keith*, *Townsend*, and *McDermott,* relator is not entitled to the requested relief and the parole board does not have a clear legal duty to perform the act sought as a matter of law. Therefore, on this record, the magistrate did not err in granting summary judgment in favor of respondents or in denying relator's request for a writ of mandamus. *Foster*.

{¶ 19} Accordingly, we overrule relator's first and second objections.

## IV. CONCLUSION

{¶ 20} Following review of the magistrate's decision, an independent review of the record, and due consideration of relator's objections, we find the magistrate correctly granted summary judgment to respondents and determined that relator is not entitled to the requested writ of mandamus. We adopt the magistrate's decision as our own and modify it to reflect our consideration of relator's September 1, 2016 reply brief and attachments. Therefore, in accordance with the magistrate's recommendation, the requested writ of mandamus is denied.

*Objections one and two overruled,*
*objection three sustained;*
*writ of mandamus denied.*

BROWN and LUPER SCHUSTER, JJ., concur.

_____

# A P P E N D I X

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The State ex rel. Michael Cobb, | : | |
| Relator, | : | |
| v. | : | No. 16AP-199 |
| Ohio Adult Parole Authority and | : | (REGULAR CALENDAR) |
| Andre Imbrogno, Chair of the Ohio Parole Board, | : | |
| | : | |
| Respondents. | : | |
| | : | |

## M A G I S T R A T E ' S   D E C I S I O N

### Rendered on September 27, 2016

*Michael Cobb,* pro se.

*Michael DeWine,* Attorney General, and *B. Alexander Kennedy,* for respondents.

### IN MANDAMUS
### ON MOTION FOR SUMMARY JUDGMENT

{¶ 21} Relator, Michael Cobb, has filed this original action asking this court to find that respondents, Ohio Adult Parole Authority and Andre Imbrogno, Chair of the Ohio Parole Board (collectively "parole board"), considered incorrect information at his last parole hearing, and order respondents to provide him a new parole hearing where he will receive meaningful review of his eligibility for parole without the parole board considering the inaccurate information.

Findings of Fact:

{¶ 22} 1. Relator is an inmate currently incarcerated at Richland Correctional Institution where he is serving a sentence of 18 years to life for a murder and robbery conviction.

{¶ 23} 2. Relator received his first parole hearing on June 11, 2015.

{¶ 24} 3. Relator was denied parole.

{¶ 25} 4. Relator filed a request for reconsideration alleging that certain errors occurred, and requesting that his records be corrected.

{¶ 26} 5. In a letter dated January 29, 2016, the parole board notified relator that his request for reconsideration was denied, stating:

> Your request for reconsideration of a previous Parole Board decision was received on 01/26/2016 and processed. DRC Policy No. 105-PBD-04 *Requests for Reconsideration and Amendments to Parole Board Actions* outlines circumstances under which rescission and reconsideration of the outcome of a parole hearing is permitted. Requests for reconsideration must be based on, and specifically refer to, *relevant and significant new information* that was either not available or not considered at the time of the hearing. In addition, any new information that forms the basis of a reconsideration request must be submitted without reasonable delay.
>
> Your request and all other relevant information was reviewed. It has been determined that the request does not meet the standard for reconsideration as set forth in policy. Therefore, no modification will be made to the last action of the Parole Board. The decision sheet you received <u>clearly</u> outlines the Parole Board's rational. There was no new information presented in your letter.

(Emphasis sic.)

{¶ 27} 6. Relator asserts that the parole board relied on the following inaccurate information:

{¶ 28} (1) A verbal statement made by parole board member Kathleen Kovach, where she stated that relator and his father, a co-defendant in the underlying criminal case, assaulted the victim with a gun, their fists, and their feet. Relator attached a copy

of the medical examiner's report of the murder victim as proof he had not been assaulted.

{¶ 29} (2) Relator asserts that the parole board information sheet inaccurately indicates that he is serving an aggregated sentence of 23 years to life when his sentence is actually 18 years to life.

{¶ 30} (3) Relator asserts that the parole board decision sheet indicates that the parole board was concerned about his "problematic conduct" despite the fact that Kovach verbally commended him for his "good institutional behavior and growth."

{¶ 31} (4) Relator asserts that he was verbally asked to "elaborate on the 'felonious assault conviction he had as a juvenile.' " Relator indicates that he explained to the parole board that he was not convicted of felonious assault as a juvenile and attached a copy of a journal entry from the Cuyahoga County Court of Common Pleas dismissing a complaint which accused him of felonious assault with a handgun.

{¶ 32} (5) Relator asserts that he was verbally informed that the parole board had a "institutional transfer document signed by then Warden of the Lorain Correctional Institution, stating he was transferred from the Lorain Correctional Institution in 2004 for 'failure to adjust' at a level 3 institution." Relator acknowledges that he was transferred, but the reason for the transfer was not failure to adjust, asserting that if that had been correct, he would have been transferred to a "level 4 facility."

{¶ 33} 7. On May 3, 2016, respondents filed a motion to dismiss.

{¶ 34} 8. On May 31, 2016, relator filed a brief in opposition to respondents' motion to dismiss.

{¶ 35} 9. On June 7, 2016, respondents filed a reply to relator's response.

{¶ 36} 10. In an effort to fully consider the matter, the magistrate converted respondents' May 3, 2016 motion to dismiss to a motion for summary judgment in an order filed August 17, 2016.

{¶ 37} 11. On August 25, 2016, respondents filed a motion asking the magistrate to set aside the order converting the motion to dismiss to a motion for summary judgment on grounds that respondents would be severely disadvantaged if relator could "incorporate an entire catalog of evidence and draw conclusions therefrom but to which Respondent would have to remain silent."

{¶ 38} 12. On September 27, 2016, the magistrate denied respondents' motion to set aside the August 17, 2016 order.

{¶ 39} 13. The matter is currently before the magistrate on respondents' motion for summary judgment.

Conclusions of Law:

{¶ 40} For the reasons that follow, it is this magistrate's decision that this court should deny relator's request for a writ of mandamus.

{¶ 41} The Supreme Court of Ohio has set forth three requirements which must be met in establishing a right to a writ of mandamus: (1) that relator has a clear legal right to the relief prayed for; (2) that respondent is under a clear legal duty to perform the act requested; and (3) that relator has no plain and adequate remedy in the ordinary course of the law. *State ex rel. Berger v. McMonagle*, 6 Ohio St.3d 28 (1983).

{¶ 42} The appropriate standard of proof in mandamus cases is proof by clear and convincing evidence. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967).

{¶ 43} A motion for summary judgment requires the moving party to set forth the legal and factual basis supporting the motion. To do so, the moving party must identify portions of the record which demonstrate the absence of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280 (1996). Accordingly, any party moving for summary judgment must satisfy a three-prong inquiry showing: (1) that there is no genuine issue as to any material facts; (2) that the parties are entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, which conclusion is adverse to the party against whom the motion for summary judgment is made. *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64 (1978).

{¶ 44} Relator relies on the Supreme Court of Ohio's decision in *State ex rel. Keith v. Ohio Adult Parole Auth.,* 141 Ohio St.3d 375, 2014-Ohio-4270, to assert that he has a clear legal right to a meaningful parole consideration hearing based on correct information, that respondent has a corresponding clear legal duty to correct errors and falsehoods from the record, and conduct a new hearing without consideration of false information. In that case, Bernard R. Keith, an inmate, requested a writ of mandamus ordering OAPA and Cynthia Mausser, former Chair of the Ohio Parole Board, to correct

erroneous information in his records. In determining that a writ of mandamus should issue, the *Keith* court explained:

> A prisoner has no constitutional or statutory right to parole. *State ex rel. Henderson v. Ohio Dept. of Rehab. & Corr.,* 81 Ohio St.3d 267, 268, 1998 Ohio 631, 690 N.E.2d 887 (1998). Because there is no such right, a prisoner who is denied parole is not deprived of liberty as long as state law makes the parole decision discretionary. *Id.* at 125. Under R.C. 2967.03, the parole decision in Ohio is discretionary. *Id.* And we have held that because a potential parolee was not deprived of life, liberty, or property by being denied parole, he could not invoke due process to challenge his allegedly inaccurate scoresheet. *State ex rel. Hattie v. Goldhardt,* 69 Ohio St.3d 123, 126, 1994 Ohio 81, 630 N.E.2d 696 (1994). Therefore, relying upon that authority, the court of appeals was not unreasonable in concluding that the parole board had no clear legal duty to correct Keith's records. *Id.*
>
> Keith cites *Layne v. Ohio Adult Parole Auth.,* 97 Ohio St.3d 456, 2002-Ohio-6719, 780 N.E.2d 548, to support his argument that he has a right to a corrected record. In that case, the OAPA used a formula for projecting an inmate's earliest possible release on parole. The formula relied on two numbers, one of which reflected the inmate's "offense category score." The inmates in Layne had been assigned incorrect offense category scores, resulting in potential release dates that were substantially later than the dates that would have resulted from the correct scores. We held that by assigning each inmate a score corresponding to an offense more serious than the offense for which he was actually convicted, the OAPA breached the state's plea agreement with the inmate. *Id.* at ¶ 25.
>
> While none of the errors alleged here breached a plea agreement as they did in *Layne, Layne* establishes a minimal standard for the OAPA, that is, that statutory language "ought to mean something." *Id.* at ¶ 27. At issue in *Layne* were the words "eligible for parole" in former R.C. 2967.13(A). We held there that inherent in the language is "the expectation that a criminal offender will receive meaningful consideration for parole." *Id.*
>
> Here, the language at issue involves the procedures relating to parole of a prisoner. The regulation setting forth the procedure for parole requires that in deciding on release of

an inmate, the parole board is to consider numerous factors, including:

(1) Any reports prepared by any institutional staff member relating to the inmate's personality, social history, and adjustment to institutional programs and assignments;

(2) Any official report of the inmate's prior criminal record, including a report or record of earlier probation or parole;

(3) Any presentence or postsentence report;

(4) Any recommendations regarding the inmate's release made at the time of sentencing or at any time thereafter by the sentencing judge, presiding judge, prosecuting attorney, or defense counsel and any information received from a victim or a victim's representative;

(5) Any reports of physical, mental or psychiatric examination of the inmate;

(6) Such other relevant written information concerning the inmate as may be reasonably available, except that no document related to the filing of a grievance under rule 5120-9-31 of the Administrative Code shall be considered;

(7) Written or oral statements by the inmate, other than grievances filed under rule 5120-9-31 of the Administrative Code.
Ohio Adm.Code 5120:1-1-07(B). As in *Layne,* this language "ought to mean something."

Inherent in the language of Ohio Adm.Code 5120:1-1-07(B) is that the board must consider various reports and "other relevant written information" pertaining to the inmate whose parole is being considered. The existence of this formal process for considering parole rightly gives parolees some expectation that they are to be judged on *their own* substantively correct reports. Requiring the board to consider specific factors to determine the parolee's fitness for release would not mean anything if the board is permitted to rely on incorrect, and therefore irrelevant, information about a particular candidate.

Our decision today does not overrule the holding in *Henderson,* 81 Ohio St.3d 267, 1998 Ohio 631, 690 N.E.2d 887, and similar cases. Keith and other prisoners still have

"no constitutional or statutory right to parole." *Id.* at 268. *See also State ex rel. Seikbert v. Wilkinson,* 69 Ohio St.3d 489, 490, 1994 Ohio 39, 633 N.E.2d 1128 (1994). A state may set up a parole system, but it has no duty to do so. *Greenholtz v. Inmates of Nebraska Penal & Corr. Complex,* 442 U.S. 1, 7, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979). Having established a parole system, the state may design that system to be entirely discretionary, and the state "may be specific or general in defining the conditions for release and the factors that should be considered by the parole authority." *Id.* at 8. Moreover, there need be no "prescribed or defined combination of facts which, if shown, would mandate release on parole." *Id.* As mentioned above, Ohio's system is entirely discretionary and creates no expectation of parole and no due-process right to parole itself.

However, having set up the system and defined at least some of the factors to be considered in the parole decision, the state has created a minimal due-process expectation that the factors considered at a parole hearing are to be as described in the statute or rule and are to actually and accurately pertain to the prisoner whose parole is being considered.

We recognize that the OAPA's discretion in parole matters is wide-ranging. *Layne,* 97 Ohio St.3d 456, 2002-Ohio-6719, 780 N.E.2d 548, ¶ 28, citing *State ex rel. Lipschutz v. Shoemaker,* 49 Ohio St.3d 88, 90, 551 N.E.2d 160 (1990). R.C. 2967.03 vests discretion in OAPA to "grant a parole to any prisoner for whom parole is authorized, if in its judgment there is reasonable ground to believe that * * * paroling the prisoner would further the interests of justice and be consistent with the welfare and security of society." However, as in *Layne,* that discretion must yield to statutory or regulatory requirements. Therefore, we hold that in any parole determination involving indeterminate sentencing, the OAPA may not rely on information that it knows or has reason to know is inaccurate.

This is not to say that the OAPA must conduct an extensive investigation on the information it reviews for every prisoner to ensure accuracy, nor does it mean that the OAPA must credit every unsupported allegation by a prisoner that the information is inaccurate.

But where there are credible allegations, supported by evidence, that the materials relied on at a parole hearing were substantively inaccurate, the OAPA has an obligation to

investigate and correct any significant errors in the record of the prisoner.

*Id.* at 378-80.

{¶ 45} Pursuant to the decision in *Keith,* the magistrate must consider whether relator has made a showing that there may be substantive errors in the record that may influence OAPA's consideration of parole. The magistrate finds that relator has not made that showing.

{¶ 46} The magistrate will consider relator's second asserted error first. Here, relator asserts that the parole board inaccurately indicated that he was serving a sentence of 23 years to life when he is actually serving a sentence of 18 years to life. Relator is correct that he is serving a sentence of 18 years to life. The trial court sentenced relator to 15 years to life on the murder conviction plus an additional 3 years for the firearm specification, and 5 years for the robbery conviction, and further ordered that the sentences run concurrently. Clearly, relator's sentence is 18 years to life.

{¶ 47} Despite the fact that the parole board incorrectly noted his sentence, the magistrate finds that relator has failed to demonstrate that this is a substantive error which could have inappropriately motivated the parole board to deny him parole.

{¶ 48} The magistrate will now consider relator's third, fourth, and fifth asserted errors. All three of these errors stem from verbal statements that relator asserts were made during his parole hearing. In his third alleged error, relator asserts that, while the parole board decision sheet lists his problematic conduct as a rationale for denying him parole, Kovach verbally commended him for his good institutional behavior and growth. Relator attached a copy of the parole board decision and minutes citing the following rational for denying him parole:

> The Board by way of a Majority Vote has determined that a release at this time would demean the serious nature of this crime. The male victim in this offense was shot in the back by the offender and was then robbed of his property that was on his person. While the Board does find that the offender has good insight into his crimes and did display remorse for his actions, they remain concerned about the inmate's problematic conduct. He is encouraged to continue to complete risk relevant programming and work on not receiving any future conduct reports.

{¶ 49} It is clear that the parole board was concerned about relator's problematic conduct and encouraged him to continue to complete risk relevant programming and work on not receiving any future conduct reports. Relator asserts that this contradicts the statement from Kovach commending him for his good institutional behavior and growth. Aside from relator's recollection of what was said at his hearing, there is no way for relator to present evidence demonstrating that this statement was made. Further, to the extent that it may have been made, the parole board's rationale does indicate that he was "encouraged to continue to complete risk relevant programming." This clearly indicates that the parole board was aware that relator had participated in certain programs but, in their opinion, he needed to continue participating in similar programs. Relator simply fails to demonstrate that this is a substantive error.

{¶ 50} In his fourth alleged error, relator asserts that a parole board member asked him to elaborate on a felonious assault conviction he had as a juvenile. Relator has included a journal entry from the common pleas court dismissing a complaint which accused relator of felonious assault with a handgun while he was a juvenile.

{¶ 51} The magistrate specifically notes the following: relator was charged with felonious assault with a handgun while he was a juvenile and relator cannot present any evidence that a parole board member asked him to elaborate on the matter by calling it a conviction instead of noting that he had been accused of felonious assault as a juvenile. There certainly is some evidence in the record that an event occurred when relator was a juvenile, and he was charged with felonious assault with a handgun. Relator cannot establish this as a substantive error.

{¶ 52} In his fifth alleged error, relator indicates that a parole board member indicated that in 2004 he was transferred from Lorain Correctional Institution to Mansfield Correctional Institution for his failure to adjust. Relator asserts as evidence that both Lorain and Mansfield Correctional Institutions are Level 3 institutions and that, had he been transferred for failure to adjust, he would have been transferred to a Level 4 facility.

{¶ 53} First, relator's fifth alleged error again concerns verbal statements allegedly made at his hearing, which he cannot corroborate. Second, as respondents note, relator points to Ohio Department of Rehabilitation & Correction Policy #53-CLS-01(F)(8), which specifically provides:

An inmate may * * * be placed in Level 4 * * *. The behavioral criteria that warrant placement at Level 4 * * * are:

[One] The inmate caused or attempted to cause serious physical harm to another.

[Two] The nature of the inmate's behavior presents a current threat to the security and orderly operation of the institution and the safety of others.

[Three] The inmate has planned or participated in a serious disturbance or riot.

[Four] The inmate has possessed or attempted to possess major contraband which poses a threat or danger to the institution. This includes, but is not limited to, weapons, drugs, escape materials, or currency.

[Five] The inmate has been identified as a disruptive security threat group participant.

[Six] Escape and related acts:

a. The inmate escaped, attempted to escape, or committed acts to facilitate an escape from a lower level facility; or,

b. The inmate escaped, attempted to escape, or committed acts to facilitate an escape while under supervision outside of the facility resulting in physical harm or threatened serious physical harm to others, or caused serious destruction to the physical plant.

[Seven] The inmate has established an inappropriate relationship with a staff member.

[Eight] The inmate through repetitive or seriously disruptive behavior has demonstrated an inability to adjust to Level 3 as evidenced by repeated findings of guilt by the Rules of Infraction Board (RIB).

{¶ 54} The above policy negates relator's assertion that he would have automatically been transferred to a Level 4 facility if indeed he had exhibited problematic conduct. The above policy indicates that transfer to a Level 4 facility based

on problematic conduct is discretionary.  For these reasons, relator's fifth alleged error is not demonstrated to a degree that establishes a substantive error.

{¶ 55} Turning now to relator's first alleged error, that the parole board incorrectly considered that he beat his victim before he shot him in the back.  With regard to this allegation, relator attached as Exhibit C the May 20, 2015 parole board information sheet completed by Lisa Hunter, a parole officer for the parole board.  Hunter provided the following details of the offense:

> On 8-4-97, the offender and his father James Cobb (co-offender), approached the victim and his friend and began assaulting the victim with the butt of a gun, their fists, and their feet. The co-offender then told the offender to "shoot that nigger and let's go!" to which the offender responded by shooting the victim in the back. He then took a necklace valued at $100.00 from the victim's pocket. Another witness advised that after beating the victim the offender began to walk away when the co-offender told him to shoot the victim. A third witness advised that the victim was accused of torching the offender's car in July and on the above date the offender was told the victim was across the street. The offender then got his father and went across the street to confront the victim about the car. After beating the victim, the co-offender was heard to say, "[y]ou shouldn't have fucked with my boy's shit." The offender then shot the victim in the back. He then snatched a necklace from the victim's neck and went back across the street.

{¶ 56} Relator also attached a copy of the autopsy of the deceased victim to indicate that he had not been beaten.

{¶ 57} As an initial matter, the information sheet completed by Hunter clearly provides details which were provided by more than one witness to the murder. Apparently, there were witnesses who testified that relator hit his victim before he shot him.  The magistrate notes that relator pled guilty, as such, there are no details provided by the trial court which this court can review in assessing the accuracy of relator's allegation.  However, as stated previously, to the extent that relator asserts that this information that he beat his victim is inaccurate, the only evidence that relator presents is his recollection that an unknown parole board member made this statement.  The information sheet he attached is not mentioned in the parole board's decision to deny him parole and relator cannot establish that it was even considered.  The magistrate

finds that relator's mere allegation does not rise to the level of demonstrating a substantive error which would warrant action from this court.

{¶ 58} Based on the foregoing, it is this magistrate's decision that relator has not made the requisite showing that there are credible allegations, supported by evidence, that the materials relied on at his parole hearing were substantively inaccurate, and this court should grant summary judgment in favor of respondents, and deny relator's request for a writ of mandamus.

/S/ MAGISTRATE
STEPHANIE BISCA

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).