NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2019-OHIO-857

THE STATE EX REL. BRUST, APPELLANT, *v.* CHAMBERS-SMITH, DIR., ET AL., APPELLEES.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Brust v. Chambers-Smith,* Slip Opinion No. 2019-Ohio-857.]

*Mandamus—Inmate failed to make credible claim of parole-record error that may prevent his parole request from receiving meaningful consideration and failed to prove clear legal right to review his parole record prior to a scheduled parole hearing—Court of appeals' denial of writ affirmed.*

(No. 2018-0583—Submitted January 8, 2019—Decided March 14, 2019.)

APPEAL from the Court of Appeals for Franklin County, No. 17AP-275, 2018-Ohio-1067.

_____

**Per Curiam.**

**{¶ 1}** Appellant, Shawn K. Brust, appeals the judgment of the Tenth District Court of Appeals denying his petition for a writ of a mandamus against appellees,

Annette Chambers-Smith, director of the Ohio Department of Rehabilitation and Correction, and Trayce Thalheimer, acting chair of the Ohio Parole Board (collectively, "DRC").[1]  Brust seeks to compel DRC to correct alleged factual errors in his parole file and grant him a new hearing.  We affirm the judgment of the court of appeals.

## FACTS AND PROCEDURAL HISTORY

{¶ 2} Brust was indicted for the shooting death of Anthony Truff.  In 1998, a jury rejected an aggravated-murder charge but found Brust guilty of the lesser included offense of murder.  The jury also rejected a drive-by specification, finding that Brust did not cause harm to another by discharging a firearm from a motor vehicle.  He was sentenced to prison for 15 years to life with an additional three years for a gun specification.

{¶ 3} At his July 2015 parole hearing, Brust's Parole Board Information Sheet ("parole information sheet") contained the following summary of the offense:

> On 8/5/97, the inmate shot and killed the male victim.  The victim was riding his bicycle at the intersection of Agustus [sic] Court and Urban Hollow Court in Columbus when the inmate shot him from his tan Isuzu Trooper.  On 8/17/97, the Franklin County Sheriff's Office received information that the inmate was the shooter.  The next day, deputies searched his parent's house and found the gun that was used in the murder.  A short time before the shooting, the inmate was heard bragging about going to the Urbancrest area to get some people back for pulling a gun on him.

---

1. This case was instituted against then director Gary Mohr and then chairman Andre Imbrogno. Director Chambers-Smith and Acting Chair Thalheimer subsequently succeeded Mohr and Imbrogno, respectively, and have been automatically substituted as appellees in this case. S.Ct.Prac.R. 4.06(B); Civ.R. 25(D)(1).

The parole board concluded that Brust was not suitable for release and scheduled his next parole hearing for 2020. Brust then sought reconsideration from DRC, alleging several factual errors in his parole record.

{¶ 4} On April 20, 2017, Brust filed a petition for a writ of mandamus in the court of appeals, arguing that the parole board had a legal duty to correct alleged inaccuracies in his parole record. Brust sought an order directing DRC to investigate and correct the alleged inaccuracies to reflect the facts contained in the record in his criminal case and schedule a new parole hearing based on the correct facts.

{¶ 5} After Brust filed his mandamus action, the parole board removed from the parole information sheet the statement that Brust shot Truss "from [Brust's] tan Isuzu Trooper" and held another hearing. Brust declined to attend the hearing, and the board again denied parole.

{¶ 6} In November 2017, a magistrate recommended that the court of appeals deny the writ of mandamus. In March 2018, the court of appeals adopted the magistrate's recommendation over Brust's objections and denied the writ.

## LAW AND ANALYSIS

{¶ 7} To obtain a writ of mandamus, Brust is required to show a clear legal right to the requested relief, a clear legal duty on DRC's part to provide it, and the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Waters v. Spaeth*, 131 Ohio St.3d 55, 2012-Ohio-69, 960 N.E.2d 452, ¶ 6. A relator must prove entitlement to a writ of mandamus by clear and convincing evidence. *State ex rel. McDermott v. Ohio Adult Parole Auth.*, 152 Ohio St.3d 144, 2017-Ohio-9242, 93 N.E.3d 967, ¶ 7.

### *Overview of* **State ex rel. Keith v. Ohio Adult Parole Auth.**

{¶ 8} The leading case on factual inaccuracies in parole records is *State ex rel. Keith v. Ohio Adult Parole Auth.*, 141 Ohio St.3d 375, 2014-Ohio-4270, 24

N.E.3d 1132 ("*Keith I*"), in which an inmate sought to compel the parole board to correct allegedly erroneous information in his parole record and conduct a new hearing using the corrected information. We held that "in any parole determination involving indeterminate sentencing the [Ohio Adult Parole Authority ("OAPA")] may not rely on information that it knows or has reason to know is inaccurate." *Id.* at ¶ 26.

{¶ 9} However, we did not conclude in *Keith I* that any information in Keith's parole record was erroneous nor did we order a new parole hearing. Instead, we held that "where there are credible allegations, supported by evidence, that the materials relied on at a parole hearing were substantively inaccurate, the OAPA has an obligation to investigate and correct any significant errors in the record of the prisoner." *Id.* at ¶ 28. Finding that Keith "ha[d] made a showing that there may be substantive errors in his record that may influence the OAPA's consideration of his parole," we ordered the parole board to investigate the allegations and to "correct any substantive errors discovered in the record it uses to consider him for parole." *Id.* at ¶ 30.

{¶ 10} After the parole board again denied Keith parole, he filed a second petition for a writ of mandamus. The court of appeals again denied a writ, and we affirmed, reiterating that "this court in *Keith I* did not hold that a writ of mandamus will issue every time an inmate identifies a factual error in his parole record. Rather, a writ will issue when there is a credible claim of an error that may prevent the inmate's application from receiving meaningful consideration." *State ex rel. Keith v. Dept. of Rehab. & Corr.*, 153 Ohio St.3d 568, 2018-Ohio-3128, 109 N.E.3d 1171 ("*Keith II*"), ¶ 16.

### Analysis of the merits of the appeal

### Brust's first, second, and third propositions of law

{¶ 11} In his first three propositions of law, Brust makes essentially the same argument—that the alleged factual errors in his parole record are substantive

and may prevent him from receiving meaningful consideration for parole. He argues that he is therefore entitled to a writ of mandamus requiring the parole board to correct the alleged errors. For ease of discussion, these three propositions of law will be addressed together.

*First alleged factual error*

{¶ 12} First, Brust alleges that the statement in the parole information sheet's summary that "[o]n 8-5-97, the inmate shot and killed the male victim" is inaccurate. Brust argues that although he did shoot Truss on August 5, 1997, Truss did not die until August 9, four days later. He contends that this discrepancy constitutes a substantive error in his parole record that the board has a legal duty, under *Keith I*, to correct.

{¶ 13} Brust has failed to establish that the phrasing used in the parole information sheet was material to his parole request or that this alleged factual error prevents his application from receiving meaningful consideration by the parole board. *See Keith II*, 153 Ohio St.3d 568, 2018-Ohio-3128, 109 N.E.3d 1171, at ¶ 16.

*Second alleged factual error*

{¶ 14} Brust acknowledges that the parole board corrected his second alleged error regarding the drive-by specification. Brust's argument regarding this error is now moot.

*Third alleged factual error*

{¶ 15} Brust next argues that the statement in his parole information sheet that "[a] short time before the shooting the inmate was heard bragging about going to the Urbancrest area to get some people back for pulling a gun on him" is a material factual inaccuracy.

{¶ 16} Brust asserts that before the shooting, he said only that he was going to confront people to recover drugs that had been taken from him. Thus, Brust argues, there is no evidence that prior to the shooting, he was bragging or

threatening to kill anyone. He also argues that the evidence at the trial did not show a prior calculation and design to cause the death of the victim, as shown by the fact that he was acquitted of aggravated murder.

{¶ 17} The parole board's minutes do not mention prior calculation or design but, rather, focus on Brust's poor behavior in prison and opine that he needed additional time "to increase his insight into the offense." Therefore, Brust has failed to prove "a credible claim of an error that may prevent [his] application from receiving meaningful consideration," *Keith II*, 153 Ohio St.3d 568, 2018-Ohio-3128, 109 N.E.3d 1171, at ¶ 16.

*Fourth alleged factual error*

{¶ 18} Brust next argues that the parole board's Offender Background Information Report inaccurately states, "On 8-5-97, Anthony Truss was gunned down while riding a bicycle." Brust argues that the phrase "gunned down" is ambiguous and that the evidence at trial showed that Truss was walking after the shooting.

{¶ 19} The verb to "gun" is "usu[ally] foll[owed] by *down*" and is defined as to "shoot (a person) with a gun." (Italics sic.) *Oxford Encyclopedic English Dictionary* 631 (1991). The evidence at trial showed that Truss was shot with a gun, and thus, there was evidence to support the parole report's statement that he was "gunned down while riding a bicycle." Therefore, Brust has failed to prove that this phrasing was inaccurate and may prevent his application from receiving meaningful consideration by the parole board. *See Keith II*, 153 Ohio St.3d 568, 2018-Ohio-3128, 109 N.E.3d 1171, at ¶ 16.

**Brust's fourth proposition of law**

{¶ 20} Brust argues that a parole-eligible inmate has a minimal due-process right to review his or her parole record for error and introduce testimony or other evidence relating to any factual inaccuracies prior to a parole hearing. Contrary to

DRC's assertion, Brust did preserve this argument by first raising it in the court of appeals.

{¶ 21} In *Keith I*, this court held that the OAPA was not required to conduct an extensive investigation in every prisoner's case to ensure the accuracy of its files. 141 Ohio St.3d 375, 2014-Ohio-4270, 24 N.E.3d 1132, at ¶ 27. Nor does *Keith I* or *Keith II* require the parole board to allow inmates to review their parole records and formally respond prior to a hearing. Under current DRC policy, each inmate is permitted to respond to the factual information discussed at the hearing and to submit verbally or in writing any additional information that is pertinent. Ohio Department of Rehabilitation and Correction, *Policy No. 105-PBD-03*, at 9, https://drc.ohio.gov/Portals/0/Policies/DRC%20Policies/105-PBD-03%20(July% 202017).pdf?ver=2017-07-31-141430-577 (accessed Jan. 22, 2019). Brust was permitted to raise his claims, and he did have an error corrected. He has failed to prove a clear legal right to review his parole record prior to a scheduled parole hearing. *See Hall v. Adult Parole Auth.*, N.D.Ohio No. 3:13-cv-0548, 2013 U.S. Dist. LEXIS 131941, *8-10 (Sept. 16, 2013) (no constitutional right to review and edit information in a parole record).

### Brust's fifth proposition of law

{¶ 22} Brust argues that the court of appeals abused its discretion by denying his motion to stay his scheduled parole hearing while his mandamus action was pending in the court of appeals. He argues that until the alleged errors in his parole record were considered and corrected by the court, it would have been a "futile endeavor" to participate in the second parole hearing.

{¶ 23} Brust cannot show that he was prejudiced by the court of appeals' refusal to stay the parole hearing, since he has failed to prove that the three remaining alleged errors exist, are substantive, and adversely affected the parole board's consideration of his parole request. *Keith II*, 153 Ohio St.3d 568, 2018-Ohio-3128, 109 N.E.3d 1171, at ¶ 17.

**{¶ 24}** The court of appeals did not err in denying Brust's petition for a writ of mandamus.

Judgment affirmed.

O'CONNOR, C.J., and KENNEDY, FRENCH, FISCHER, DEWINE, DONNELLY, and STEWART, JJ., concur.

_____

Shawn K. Brust, pro se.

Dave Yost, Attorney General, and Byron D. Turner, Assistant Attorney General, for appellees.

_____