[Cite as *State ex rel. Edwards v. Ohio Dept. of Rehab. & Corr.*, 2020-Ohio-2799.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Keith Edwards, | : | |
| Relator, | : | |
| v. | : | No. 19AP-195 |
| Ohio Department of Rehabilitation and Correction, et al., | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |
| | : | |

D E C I S I O N

Rendered on May 5, 2020

**On brief:** *Keith Edwards,* pro se.

**On brief:** *Dave Yost,* Attorney General, and *George Horvath,* for respondent.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

BEATTY BLUNT, J.

{¶ 1} Relator, Keith Edwards, commenced this original action requesting a writ of mandamus ordering respondent,[1] Ohio Department of Rehabilitation and Correction ("ODRC"), to correct allegedly inaccurate information in his parole hearing file and provide him with a new parole board hearing.

{¶ 2} Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate who issued the appended decision, including findings of fact and conclusions of law. The magistrate recommended this court

---

[1] The complaint also names Cynthia Mausser and Trayce Thalheimer as respondents; however, neither the record nor the Clerk's docket indicate that either of these individuals was served with the complaint and summons. Accordingly, neither of these individuals is properly before the court.

grant summary judgment in favor of respondent and deny relator's requested writ of mandamus. For the following reasons, we overrule relator's objections and deny the requested writ.

## I. Facts and Procedural History

{¶ 3} The following facts are undisputed. Relator is currently incarcerated at the Richland Correctional Institution where he is serving a sentence of 15 to 40 years after being found guilty by way of a jury trial in the Cuyahoga C.P. No. CR 232945 of the following: one count of aggravated burglary (Count 1); one count of felonious assault (Count 2); two counts of aggravated robbery, each with a gun specification (Counts 3 and 4); and one count of involuntary manslaughter, with gun specification (Count 5).

{¶ 4} Relator appealed his conviction in *State v. Edwards*, 8th Dist. No. 58002 (Feb. 7, 1991) and his conviction was upheld. Subsequently, relator appeared before the parole board for release consideration in 2001, 2009 and 2013, and each time the parole board denied relator's release.

{¶ 5} On September 4, 2018,[2] relator appeared before the parole board for his fourth and most recent release consideration hearing. The parole board again denied relator's release. The parole board's decision and minutes dated September 4, 2018 indicate the board considered mandatory factors in Ohio Adm.Code 5120:1-1-07 and found substantial reason to believe due to the serious nature of the crime, the release of relator into society would create undue risk to public safety or would not further the interest of justice or be consistent with the welfare and security of society. The parole board's rationale states:

> Offender has an under developed (sic) release plan, nor does he have a plan to manage his offending behavior. However, he does have some family support. Offender has taken a serious amount of programming and college preparation classes. Offender continues to accumulate significant tickets. After weighing relevant factors, the board does not consider the offender suitable for release at this time.

---

[2] Relator alleges in his complaint that the date of this hearing was August 20, 2018. The record, however, shows that although the hearing was originally scheduled for August 20, 2018, it was continued to September 4, 2018.

(Sept. 4, 2018 Ohio Parole Bd.Decision & Minutes at 1.)  The parole board set the next parole hearing date for August 1, 2022.

{¶ 6}  On April 4, 2019, relator filed a complaint for a writ of mandamus "to correct inaccurate information in his parole hearing file" and provide relator "with a new parole board hearing which is meaningful."  (Compl. for Writ of Mandamus at 2.)  The complaint alleges five claims of error: (1) the parole board incorrectly considered that relator "kidnapped, beat and shot the female victim in the head causing her death, or aided the co-defendant in taking the female victim, Fannie Lowe, from the upstairs bedroom to the basement where she was beaten, shot and killed"; (2) the parole board incorrectly considered relator "committed a theft offense/robbed the victim of $800.00"; (3) the parole board incorrectly considered "the female victim, Fannie Lowe, was shot 2x(2-times) resulting in her death"; (4) the parole board incorrectly considered relator "committed serious rule infractions"; and (5) the parole board incorrectly considered relator "was found guilty and sentenced to a gun specification with the charge of Burglary and felonious assault."  (*Id.* at 5-7.)  Relator asserts due to the foregoing "false, incorrect, and/or inaccurate" information he is entitled to the extraordinary writ of mandamus pursuant to *State ex rel. Keith v. Ohio Adult Parole Auth.*, 141 Ohio St.3d 375, 2014-Ohio-4270.  (*Id.* at 3, 5-7.)

{¶ 7}  On August 5, 2019, ODRC filed a combined brief and motion for summary judgment.  On August 19, 2019, relator filed a brief in opposition[3] to ODRC's motion for summary judgment.

{¶ 8}  Subsequently, on December 3, 2019, the magistrate issued a decision addressing the merits of the motion for summary judgment.  In addressing relator's alleged claims of error, the magistrate concluded relator had not made the requisite showing under *Keith* that there are credible allegations, supported by evidence, that the materials relied on at his parole hearing were substantively inaccurate.  As such, the magistrate determined this court should grant summary judgment in favor of ODRC and deny relator's request for a writ of mandamus.

---

[3] Relator's brief in opposition is titled as a "Response and Objections to Respondents (sic) Argument in Opposition to Writ of Mandamus."

## II.  Objections

{¶ 9}    Relator sets forth the following two objections:

[1.] The Magistrate's conclusion of law requiring Relator to demonstrate that the same subject of error was repeated at multiple hearing is contrary to clearly established law, and expands the scope the holding set forth in Keith v. Ohio Adult Parole Authority, 141 Ohio St.3d 375.

[2.] The Magistrate's conclusion of law and fact stating that the false reports/information in the parole file does not raise to a level of substantial error clearly an erroneous finding of law and fact.

(Sic passim.)

## III.  Discussion

{¶ 10}   We observe at the outset that summary judgment procedure applies to an action in mandamus. *State ex rel. Cobb v. Ohio Adult Parole Auth.,* 10th Dist. No. 16AP-199, 2017-Ohio-1170, ¶ 12, citing *State ex rel. Wilson v. Preston*, 173 Ohio St. 203 (1962), paragraph three of the syllabus.  Pursuant to Civ.R. 56(B), a party may move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part of the claim.  The party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record demonstrating the absence of a genuine issue of material fact by pointing to specific evidence of the type listed in Civ.R. 56(C).  *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996).  If the moving party fails to satisfy its initial burden, the court must deny the motion for summary judgment; however, if the moving party satisfies its initial burden, summary judgment is appropriate unless the nonmoving party responds, by affidavit or as otherwise provided under Civ.R. 56, with specific facts demonstrating a genuine issue exists for trial.  *Id.*; *Hall v. Ohio State Univ. College of Humanities*, 10th Dist. No. 11AP-1068, 2012-Ohio-5036, ¶ 12, citing *Henkle v. Henkle,* 75 Ohio App.3d 732, 735 (12th Dist. 1991.)

{¶ 11} Summary judgment is proper only where the movant demonstrates that: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is

made, said party being entitled to have the evidence construed most strongly in his favor. *Cobb,* 2017-Ohio-1170 at ¶ 12, citing *State ex rel. Nelson v. Ohio Adult Parole Auth.*, 10th Dist. No. 09AP-940, 2010-Ohio-4994, ¶ 21.

{¶ 12} Thus, summary judgment in favor of ODRC in the context of this mandamus action is proper where the undisputed evidence, viewed most strongly in relator's favor, fails to show relator is entitled to the extraordinary writ as a matter of law. *Cobb,* 2017-Ohio-1170 at ¶ 13, citing *State ex rel. Foster v. Ohio State Adult Parole Auth.*, 10th Dist. No. 91AP-1109 (Aug. 6, 1992). To be entitled to a writ of mandamus, relator must show by clear and convincing evidence that: (1) relator has a clear legal right to the relief requested; (2) the parole board has a clear legal duty to perform the act sought; and (3) that relator has no plain and adequate remedy in the ordinary course of law. *Id.*, citing *State ex rel. Townsend v. Mohr*, 10th Dist. No. 15AP-681, 2016-Ohio-5942, ¶ 5.

{¶ 13} As stated previously, relator's argument that he is entitled to a writ of mandamus is premised on *State ex rel. Keith v. Ohio Adult Parole Auth.,* 141 Ohio St.3d 375, 2014-Ohio-4270 ("*Keith I*"), the seminal case concerning factual inaccuracies contained in inmates' parole records. An inmate has "no constitutional or statutory right to parole." *Keith I* at ¶ 19, citing R.C. 2967.03. Rather, R.C. 2967.03 vests discretion in the parole board to "grant a parole to any prisoner for whom parole is authorized, if in its judgment there is reasonable ground to believe that * * * paroling the prisoner would further the interests of justice and be consistent with the welfare and security of society." R.C. 2967.03. In determining whether to parole an inmate, the parole board must consider various reports and "other relevant written information" pertaining to the inmate whose parole is being considered. *Keith I* at ¶ 23; Ohio Adm.Code 5120:1-1-07(B) (setting forth the factors to be considered by the parole board in determining whether to parole an inmate).

{¶ 14} In *Keith I*, the Supreme Court of Ohio held that "in any parole determination involving indeterminate sentencing, the OAPA may not rely on information that it knows or has reason to know is inaccurate." *Id.* at ¶ 26. Thus, under *Keith I*, "where there are credible allegations, supported by evidence, that the materials relied on at a parole hearing were substantively inaccurate, the OAPA has an obligation to investigate and correct any significant errors in the record of the prisoner." *Id.* at ¶ 28.

{¶ 15} Nevertheless, the Ohio Supreme Court did not hold in *Keith I* "that a writ of mandamus will issue every time an inmate identifies a factual error in his parole record. Rather, a writ will issue when there is a credible claim of an error that may prevent the inmate's application from receiving meaningful consideration." *State ex rel. Keith v. Dept. of Rehab. & Corr.*, 153 Ohio St.3d 568, 2018-Ohio-3128, ¶ 16 ("*Keith II*"). The foregoing test requires a court to determine whether an inmate has alleged a "substantive error" in the record that precluded meaningful consideration of his release. *State ex rel. Brust v. Chambers-Smith*, 156 Ohio St.3d 331, 2019-Ohio-857, ¶ 9. In this context, a "substantive error" is synonymous with "substantial error." *State ex rel. Cobb v. Adult Parole Auth.*, 155 Ohio St.3d 527, 2018-Ohio-4745, ¶ 8; *see also Keith II* at ¶ 16 (the concern is that the existence of "materially false or misleading information in an inmate's parole record" may prevent an inmate from "receiving meaningful consideration" of his parole request). Thus, the operative inquiry is "whether there is a reasonable possibility that *but for the alleged error*, the parole board would have reached a different decision." (emphasis added.) *Cobb,* 2018-Ohio-4745 at ¶ 9.

{¶ 16} Having set forth the law applicable to relator's request for a writ of mandamus in this action, we turn now to the objections he has stated in response to the magistrate's decision. In his first objection, relator asserts the magistrate improperly expands the scope of the holding set forth in *Keith I* by "requiring Relator to demonstrate that the same subject of error was repeated at multiple hearing (sic) " and is therefore contrary to law. We disagree. (Dec. 19, 2019 Obj. to Mag. Decision at 1.)

{¶ 17} Relator wholly misapprehends the context within which the magistrate was discussing the possibility the same subject of error might have been repeated at multiple hearings. The magistrate was discussing such a possibility in response to relator's contention he was entitled to have this court review not only his most recent parole release consideration hearing, but also those hearings which occurred in 2001, 2009 and 2013. In pointing out relator had failed to cite to any case law that would require the court to look backward beyond the most recent parole board hearing, the magistrate observed that relator's contention might have some support had the same subject or subjects of error been repeated at each of the previous hearings. This is not, however, what relator has stated in his complaint or argued in his briefs. Thus, the magistrate concluded the law required the court to review only the most recent parole release consideration hearing.

We find the magistrate's conclusion on this point to be sound. Therefore, we overrule relator's first objection.

{¶ 18} In his second objection, relator asserts the magistrate's "conclusion of law and fact stating that the false report/information in the parole file does not raise to a level of substantial error clearly an erroneous finding of law and fact." *Id.* at 1. In support of this objection, relator presents three specific factual items which he alleges are false so as to rise to the level of "substantive error" as contemplated by *Keith I.* He also asserts that the magistrate's finding that the transcript pages submitted by relator were not properly verified was clearly erroneous because the court "originally ruled that Relator did not have to verify evidence he intended to submit on the record." *Id.* at 2. Again, we disagree on all points raised by relator.

{¶ 19} Regarding the trial transcript pages submitted by relator, the magistrate's order concerning the filing of evidence issued on May 13, 2019 clearly indicates evidence submitted must be either stipulated or certified, and specifically references Loc.R. 13. Loc.R. 13(G) provides, in pertinent part, "Unless the parties enter into a stipulation concerning the evidence to be submitted to the Court and attach to the stipulation legible copies of such evidentiary materials relevant to the determination of the action, each party shall file with the Court legible *certified* copies of evidentiary materials the party feels relevant to the issues before the Court." (Emphasis added.) Therefore, relator's contention the court ruled relator did not need to submit verified evidence is completely without merit.

{¶ 20} Regarding the allegedly false factual items which relator presents, we address them in turn as follows. First, we agree with relator that the record does not support the magistrate's finding and the parole board's reliance on the fact relator was found guilty for the theft of $800 (versus the $30.00 which relator indisputably was found to have taken.) Nevertheless, we find no merit to relator's contention that this factual error in his parole record prevented relator from receiving meaningful consideration of his parole request. Put another way, we find there is no reasonable possibility that but for the foregoing error, the parole board would have reached a different decision. *See Cobb,* 2018-Ohio-4745 at ¶ 9.

{¶ 21} Next, relator asserts the autopsy report shows the victim Fannie Lowe was shot once in the head, versus twice in the head as relator's parole record from his 2009

hearing indicated, and that this discrepancy rises to a substantive error. We agree, and as the magistrate also found, the autopsy report shows Fannie Lowe was shot once in the head. However, we have already determined only the most recent parole release hearing is relevant to our inquiry in the instant action, and the Ohio Parole Board Vote Sheet dated August 16, 2018 pertaining to the most recent hearing references only that relator (and his co-defendant) "shot [Fannie Lowe] in the head" without specifying the number of times she was shot. (Aug. 19, 2019 Rel. Response at 4.) Moreover, we find that regardless of whether the parole board considered Fannie Lowe was shot twice in the head or that she was shot once in the head, this difference is not a "substantive error" because there is no possibility that but for this discrepancy, the board would have reached a different decision than the one it did. *See Cobb,* 2018-Ohio-4745 at ¶ 9.

{¶ 22} Finally, we agree with relator that the record does not support the magistrate's finding and the parole board's reliance on the fact relator was found guilty of felonious assault of the victim Fannie Lowe. Notwithstanding our agreement on this point, however, we note relator's parole record correctly indicates relator was found guilty of aggravated burglary; two counts of aggravated robbery with a gun specification; one count of felonious assault (of the victim John Lowe); and one count of involuntary manslaughter with a gun specification for the death of Fannie Lowe. In light of these convictions resulting from relator's violent crimes against John and Fannie Lowe, we do not find the fact that relator was not convicted for felonious assault of Fannie Lowe rises to a "substantive error" that prevented relator from receiving meaningful consideration of his parole request because there is no possibility the board would have reached a different decision than the one it did in any event. *See Cobb,* 2018-Ohio-4745 at ¶ 9.

{¶ 23} In short, none of the factual errors identified by relator are "substantive errors" pursuant to *Keith I* because none of them prevented relator from receiving meaningful consideration of his parole request. There simply is no reasonable possibility that but for any or all the alleged errors, the parole board would have reached a different decision. *Cobb,* 2018-Ohio-4745. Therefore, we overrule relator's second objection.

**IV. Conclusion**

{¶ 24} Following our review of the magistrate's decision, an independent review of the record, and due consideration of relator's objections, we find the magistrate correctly granted summary judgment to respondent and determined relator is not entitled to the requested writ of mandamus.  We therefore adopt those portions of the magistrate's findings of fact and conclusions of law that are not inconsistent with this decision, overrule relator's objections, and grant summary judgment in favor of ODRC as recommended by the magistrate.  Accordingly, the requested writ of mandamus is denied.

*Objections overruled;*
*Summary judgment granted;*
*writ of mandamus denied.*

KLATT and BRUNNER, JJ., concur.

_____

**A P P E N D I X**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The State ex rel. Keith Edwards, | : | |
| Relator, | : | |
| v. | : | No. 19AP-195 |
| Ohio Department of Rehabilitation and Correction et al., | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |
| | : | |

---

M A G I S T R A T E ' S   D E C I S I O N

Rendered on December 3, 2019

---

*Keith Edwards,* pro se.

*Dave Yost,* Attorney General, and *George Horvath,* for respondents.

---

IN MANDAMUS ON
RESPONDENTS' MOTION FOR SUMMARY JUDGMENT

**{¶ 25}** Relator, Keith Edwards, has filed this original action requesting this court issue a writ of mandamus ordering respondent, Ohio Department of Rehabilitation and Correction ("ODRC"), to reconsider his eligibility for parole after correcting the inaccurate information in his records which inaccurate information was relied on by the Ohio Adult Parole Board ("board") to deny relator parole.

Findings of Fact:

{¶ 26} 1. Relator is an inmate currently incarcerated at Richland Correctional Institution.

{¶ 27} 2. Relator had been indicted in the Cuyahoga County Court of Common Pleas under case No. CR 232945 on five counts: one count of aggravated burglary in violation of R.C. 2911.11 (with gun specification); one count of felonious assault in violation of R.C. 2903.11; two counts of aggravated robbery in violation of R.C. 2911.01 (with gun specification); and one count of aggravated murder in violation of R.C. 2903.01 with a felony murder.

{¶ 28} 3. Relator was found guilty of Count 1, aggravated burglary, but not guilty of the gun specification. In each of the aggravated robbery counts, 3 and 4, relator was found guilty of the gun specification and, as to Count 5, relator was found guilty of the lesser included offense of involuntary manslaughter with gun specification. The trial court sentenced relator to a term of 10 to 25 years on Count 1, 10 years actual incarceration; 8 to 15 years on Count 2, 8 years actual incarceration; 10 to 25 years on Counts 3, 4, and 5, 10 years actual incarceration; 3 years actual incarceration to be served consecutively on the gun specification; all sentences to run concurrently except Count 2, felonious assault, to run consecutive to Counts 1, 3, 4, and 5.

{¶ 29} 4. Defendant appealed his conviction in *State v. Edwards,* 8th Dist. No. 58002 (Feb. 7, 1991), and his conviction was upheld.  The court noted the following facts had been adduced at trial:

> John Lowe, a retired seventy-four-year-old, and his wife Fannie, a victim of Alzheimer's disease, were alone at their residence at 1195 East 125th Street on or about October 15, 1988. Shortly after 8:00 a.m., Mr. Lowe was awakened by a knock on the side door of his home. Defendant Keith Edwards, whom John Lowe knew for well over three years arrived at the Lowe home with a young man Lowe had not previously met.
>
> Edwards, who had done various repair work for Lowe and even entertained Lowe socially in his home, was granted entry to the home and apparently showed the young man who accompanied him the dining room ceiling fixture defendant had repaired. After a few minutes both men departed from the Lowe home.

Within the hour Edwards returned with another companion also unknown to Lowe and banged on the side door seeking admittance. Lowe let the two men in and they followed him when he immediately went into his basement to turn off his alarm system. Defendant directed his companion to retrieve a crowbar leaning against the basement wall and bring it upstairs as they both exited the basement following Lowe into the kitchen. Edwards directed Lowe to sit at the kitchen table. When Lowe complied, Edward's companion who was later identified as Jack Brown, began to attack and beat Lowe with the crowbar. During this assault Edwards repeatedly asked Lowe where "is the money," demanded he "shut up," and kept Lowe pinned down in his seat by standing behind him and holding both Lowe's hands on the table. (Tr. 278). At this point, Brown brandished a butcher knife from Lowe's kitchen and threatened to cut Lowe's throat. Lowe told both perpetrators he had money in his pocket. Brown reached into the victim's pants pocket and stole thirty dollars.

The two men again began to beat the victim demanding to know where Lowe kept "the rest of the money." Lowe told them it was upstairs in the attic. Lowe then attempted to flee from his assailants but they apprehended him at the kitchen door and shoved him into the basement so he could not escape. Defendant brought the victim upstairs and again sat him at the kitchen table where the victim was subjected to more beating about the head with the crowbar. (Tr. 282). The victim remembers crying out for his wife and telling his assailants the rest of his money was in the attic. Mr. Lowe saw his wife standing on the landing between the first and second floor in her nightgown. Subsequently, Mr. Lowe fell to the floor as a result of the force of the blows and temporarily lost consciousness.

When Lowe awoke he heard the unknown assailant telling Edwards to come upstairs with him. Mr. Lowe began to get up off the floor and saw his wife collapsed in a heap lying on the second step by the side door breathing heavily. Lowe was unable to lift or drag his wife due to the severe beating and blood loss he sustained so he fled quickly across the street to the home of his neighbor Willie Scullark for help.

Willie Scullark testified he was at the kitchen table at approximately 10:20 a.m. when John Lowe knocked and came right in. Mr. Scullark saw Lowe was bloody and beaten. When Lowe stated they were robbing his house, Scullark called 911. Scullark went out onto his porch and observed defendant,

whom he knew as someone who performed work at Lowe's home, carrying a crowbar and putting a TV in the back end of a black car which had Ohio plates bearing the numbers "7-5-4."

Sam Bush testified he was having breakfast with his friend Willie Scullark when Mr. Lowe appeared at the door bleeding and beaten. Bush walked to the Scullark front porch and saw a man carrying a crowbar or jack handle and a television set which he placed in the back seat of a vehicle. Bush described the vehicle as a black or blue Dodge Omni or Horizon with Ohio plates whose numbers were "754." Bush viewed three separate photo arrays and each time was able to identify defendant as the man who carried the crowbar and television set.

Patrolman Hartman testified that upon entering the dwelling he observed EMS working on Fannie Lowe who lay at the bottom of the steps. Mr. Lowe told the police officer he was assaulted by two men, one of whom was Keith Edwards.

Fannie Lowe was pronounced dead that morning at Huron Road Hospital at 11:19 a.m. The coroner determined the cause of death was a gunshot wound to the head. John Lowe was treated at University Hospital for a head laceration, ecchymotic swollen eyes and multiple trauma and subsequently released to follow up at the V.A. Hospital.

Detective Copeland, who was placed in charge of the investigation, testified defendant's girlfriend Patricia Scott voluntarily came to the station within a day or two of the crime and produced four traffic citations issued to "Norma McEwen." Ms. Scott divulged the fact that McEwen was an associate of Edwards. After checking with people in the area, the police ascertained Edwards was indeed in the area of the McEwen apartment. The police obtained a warrant and arrested defendant Edwards, Jack Brown and Norma McEwen.

The police confiscated a crowbar at the McEwen apartment that Lowe identified at trial as his. (Tr. 821).

Norma McEwen testified she, defendant, Jack Brown, a girl named Cheryl and a man named "Mickey" all stayed in her apartment and throughout the night and early morning of October 15, 1988 drank alcohol and used cocaine.

> Defendant, Jack Brown and "Mickey" left the apartment early the morning of October 15, ostensibly to get "some money." McEwen testified both men returned to the apartment about noon the same day, October 15, 1988, with a small dark car, some female jewelry and two television sets. A few days later defendant admitted to McEwen he "might be facing a murder rap." (Tr. 655).
>
> Robert Carlson reported his Plymouth Horizon stolen on Saturday, October 15, 1988, about 10:15 to 10:30 a.m. at the Justice Center; the license plate number was 745-AHB. The car was subsequently recovered by the police after it hit a vehicle and the driver abandoned it while being pursued by the police. (Tr. 631).
>
> Edwards testified in his own defense. Edwards asserted he defended the Lowes against the attacks of Jack Brown who held the gun, threatened him and forced him to drive the stolen car. (Tr. 1360). Edwards testified he was held prisoner by Jack Brown until he was subsequently arrested and transported to jail. Edwards asserted duress as a defense.

*Id.*

{¶ 30} 5. In this mandamus action, relator points to his parole hearings from 2001, 2009, 2013, and 2018, and claims the parole board has relied on incorrect information to deny him parole. First, relator contends that he did not steal $800 as is noted in the April board decision sheet. Second, relator contends the female victim died by one single gunshot to the head and not two shots as noted by the board's notes. Third, relator contends that his prison records do not contain any serious rule infractions but only minor infractions, contrary to the board's notes.

{¶ 31} 6. Relator filed this mandamus action on April 4, 2019.

{¶ 32} 7. Respondents filed a motion for summary judgment and has attached evidence thereto. Relator has responded and has also filed a brief in this matter.

{¶ 33} 8. The matter is currently before the magistrate.

Conclusions of Law:

{¶ 34} For the reasons that follow, it is this magistrate's decision that this court should grant summary judgment in favor of respondents and deny relator's request for a writ of mandamus.

{¶ 35} In order to be entitled to a writ of mandamus, relator must establish by clear and convincing evidence: (1) a clear legal right to the relief requested, (2) a clear legal

duty on the part of the board to provide it, and (3) the lack of an adequate remedy in the ordinary course of the law. *See State ex rel. Priest v. Dankof,* 143 Ohio St.3d 82, 2015-Ohio-165; *State ex rel. Berger v. McMonagle*, 6 Ohio St.3d 28 (1983).

{¶ 36} The leading case on factual inaccuracies in parole records is *State ex rel. Keith v. Ohio Adult Parole Auth.,* 141 Ohio St.3d 375, 2014-Ohio-4270 ("*Keith I*"), in which an inmate sought to compel the board to correct allegedly erroneous information in his parole record, and conduct a new hearing using the corrected information. The Supreme Court of Ohio held that "in any parole determination involving indeterminate sentencing the [board] may not rely on information that it knows or has reason to know is inaccurate." *Id.* at ¶ 26. However, in *Keith I*, the court did not conclude that any information in Keith's parole record was erroneous nor did the court order a new parole hearing. Instead, the court held that "where there are credible allegations, supported by evidence, that the materials relied on at a parole hearing were substantively inaccurate, the [board] has an obligation to investigate and correct any significant errors in the record of the prisoner." *Id.* at ¶ 28. Finding that Keith had "made a showing that there may be substantive errors in his record that may influence the board's consideration of his parole," the court ordered the board to investigate the allegations and to "correct any substantive errors discovered in the record it uses to consider him for parole." *Id.* at ¶ 30.

{¶ 37} After Keith was again denied parole, he filed a second petition for a writ of mandamus. This court denied the writ and the Supreme Court affirmed, reiterating that "this court in *Keith I* did not hold that a writ of mandamus will issue every time an inmate identifies a factual error in his parole record. Rather, a writ will issue when there is a credible claim of an error that may prevent the inmate's application from receiving meaningful consideration." *State ex rel. Keith v. Dept. of Rehab. & Corr.,* 153 Ohio St.3d 568, 2018-Ohio-3128 ("*Keith II*").

{¶ 38} Relator asks this court to go back to 2001, 2009, 2013, as well as 2018, when he was denied parole. However, relator has not cited any case law that would require this court to look back at his 2001, 2009, and 2013 parole hearings and, if this court were to find substantive errors that may have affected the outcome, order new hearings. The outcome might be different if relator was able to demonstrate that the same subject of error was repeated at multiple hearings; however, he is unable to do so. As such, the

magistrate finds that a review of his most recent parole hearing from August 20, 2018 is the relevant hearing to review.

{¶ 39} Respondents filed the affidavit of Jamie O'Toole-Billingsley, the executive assistant to the board, who verified the authenticity of various documents attached as evidence. Included as that evidence is the August 16, 2018 vote sheet which identified the details of the offense for which relator was convicted as follows:

> On 10-15-88, the offender and co-offender entered the elderly victims' home under the guise of the offender showing the co-offender work he had done on the basement. The two went to the basement, grabbed a tire iron, and proceeded to demand money from the male victim. When he only gave them $30.00, they beat him with the tire iron in the face, head, and back, knocking him semi-unconscious. The two then proceeded to the second story where they encountered the female victim and obtained a .38 caliber revolver belonging to the male victim. They forced the female victim to the basement stairs where they beat her and shot her in the head. They then stole $800.00 in cash from the attic and a 21" Magnavox television. When the male victim regained consciousness, he went to a neighbor for help.

{¶ 40} That document also provides that relator has "taken every course that there is to offer. Received Associates from Ashland in Dec. [2017]; Bachelor's Degree in April 2019; Also received a 1 year certification in Vocational [Drafting] in June 2016 and completed a 2 [year] Janitorial Apprenticeship in April 2018 – HE HAS [COMPLETED] ALL 6 PHASES OF REINTEGRATION AT RICI." (Emphasis sic.)   That document also provides information that relator still does not accept responsibility for his actions and continues to argue that he was not involved. Specifically, the vote sheet provides:

> Offender states he did not shoot the victim and nor did he know what was going to take place before arriving at the victim's home. States he took the codefendant to the victim's home to assist him with work he was doing on the couple's home. He said as he was preparing to do the work he turned his back to look out the window and next thing he knew; the codefendant was wailing a tire iron at the victim. He said he tried to stop him and the codefendant hit him in the midst of that. He states the codefendant caused the victim to fall down the basement stairs where he continued to beat him. He said the codefendant then went back into [the] house to get another TV while he was trying to help the victim. He states they fled after that. He states the codefendant did not shoot

the female victim, he feels the next door neighbor shot the female victim when he came over after the male/victim made him aware of what had just happened. He then said, he was taken to an apartment where he was tied up or bound with 2 neck ties on his ankles and wrists and ankle. Prior to that they took him of [] town. He states the male victim could hav[e] shot the f/v [sic] (his wife) because he shot his previous wife 5x and went to prison.

{¶ 41} Lastly, under the rationale portion, the vote sheet provides that "[o]ffender has an under developed release plan, nor does he have a plan to manage his offending behavior, however he does have some family support. He has taken a serious amount of programming and college preparation classes. Offender continues to accumulate significant tickets which displays bad judgment."

{¶ 42} The documents submitted by respondents also include relator's disciplinary history.

{¶ 43} To the extent that relator argues that it is inaccurate to hold him responsible for the theft of $800 or the beatings John Lowe or Fannie Lowe experienced, relator was found guilty of those charges. To the extent that he argues now that he did not steal the $800 or that he did not hit either of these victims is immaterial. Further, while it is correct that the autopsy report shows that Fannie Lowe was shot in the head one time, the magistrate finds that a reference that she was shot two times is not a substantive error which would have impacted the decision to grant or deny relator parole.

{¶ 44} Relator also asserts that he was under duress and that the board did not intervene; however, although relator has provided what appears to be pages from the transcript of his trial, these items were not submitted as exhibits, and have not been verified. Relator and his co-defendant attacked two elderly victims. One was beaten unconscious and the other was killed by a single gunshot wound to the head. To the extent that relator continues to maintain he was innocent, the trial court found there was sufficient evidence to support a conviction, and that decision was upheld on appeal.

{¶ 45} To the extent that relator contends the board erred in 2013 when it noted he had serious prison rule infractions, the magistrate notes that no such statement was made in 2018 at the most recent hearing. Ultimately, it was determined that relator had an under developed release plan, and did not have a plan to manage his offending behavior. Although noting that he did have some family support and that he had taken a

serious amount of programming and college preparation classes, relator continued to accumulate significant tickets and, after weighing all the factors, the board found that he was not suitable for release at this time. None of the allegations which relator has made prompt this magistrate to recommend this court find that relator has made a showing that there may be substantive errors in the record which may have influenced the consideration of his release on parole. As such, relator has failed to show that he is entitled to a writ of mandamus.

{¶ 46} Based on the foregoing, it is this magistrate's decision that this court should grant respondents' motion for summary judgment, and deny relator's request for a writ of mandamus.

/S/ MAGISTRATE
STEPHANIE BISCA

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).