[Cite as *Damron v. Ohio Parole Bd.*, 2025-Ohio-4959.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

James Damron, :

    Plaintiff-Appellant, :

                                                  No. 24AP-724

v. : (C.P.C. No. 24CV-1212)

Ohio Parole Board, : (REGULAR CALENDAR)

    Defendant-Appellee. :

---

D E C I S I O N

Rendered on October 30, 2025

---

**On brief:** *The Law Office of Eric J. Allen, Ltd.*, and *Eric J. Allen*, for appellant.

**On brief:** *Dave Yost*, Attorney General, and *B. Alexander Kennedy*, for appellee.

---

APPEAL from the Franklin County Court of Common Pleas

BOGGS, J.

{¶ 1} Plaintiff-appellant, James Damron, appeals the judgment of the Franklin County Court of Common Pleas, which granted a motion filed by defendant-appellee, the Ohio Parole Board ("the parole board"), to dismiss his complaint for declaratory judgment for failure to state a claim upon which relief can be granted. For the following reasons, we affirm the trial court's judgment.

## I. FACTS AND PROCEDURAL BACKGROUND

{¶ 2} Damron, who is currently an inmate in the custody of the Ohio Department of Rehabilitation and Correction ("ODRC"), filed a complaint against the parole board on February 12, 2024, seeking a declaratory judgment that the parole board denied him meaningful consideration for parole in violation of Ohio law at his first parole hearing. According to his declaratory-judgment complaint, Damron was sentenced in 2003 to

imprisonment for 15 years to life after pleading guilty to two counts of murder. While incarcerated, Damron has "become a believer in the Christian Separatist movement," which involves the belief "that the races were meant to be separate." (Feb. 12, 2024 Compl. at ¶ 11.) Damron maintains that ODRC has erroneously conflated Christian Separatism with white supremacy and has erroneously labeled him a white supremacist. He claims the "theology [of Christian Separatism] requires the study of certain texts and use of symbols that [ODRC] forbid[s]." *Id.* In particular, he alleges he has been investigated by the Security Threat Group investigator based on his "religious use of the [s]wastika," *id.* at ¶ 13, and has been retaliated against "for filing . . . lawsuits, for attempting to practice his religion, for spreading his gospel in the prison, and for the misbelief that he is a white supremacist." *Id.* at ¶ 14.

{¶ 3} Damron's first parole hearing was held via video conference on October 4, 2022. The hearing lasted 45 minutes, during which parole board members questioned Damron about his offenses and his reintegration plan. Damron claims, "it was clear that the [parole board] members were more concerned with his [Christian Separatist] beliefs than [with] his programming and growth as a man" during his confinement. *Id.* at ¶ 15. The parole board denied Damron parole and continued the matter for 119 months, until September 2032. Damron attached to his complaint the parole board's "Decision and Minutes," in which it outlined its rationale for its decision. The parole board stated it had considered the mandatory factors set out in Adm.Code 5120:1-1-07 and that those factors supported continuing Damron's incarceration. Explaining its rationale, the parole board stated:

> The offender's case is aggravated by the unique factors of extreme violence, where two male victims were shot to death by the offender. The inmate has completed some relevant programming but has misconduct issues throughout his incarceration, some resulting in segregation. The offender appears to have ongoing errors in his thinking and judgment. His release plan is thought out and he has support. The aggravating factors in this case lead the Board to conclude that release would demean the seriousness of the offense and not further the interest of justice. The offender's rehabilitative efforts do not outweigh the unique factor of his offenses, at this time. In addition to the[re] being significant community opposition. After considering relevant factors, the Board does not consider the inmate suitable for release.

(Compl., Ex. at 1.)  The parole board found those factors supported several reasons for continued incarceration set out in Adm.Code 5120:1-1-07(A).

{¶ 4}  Damron alleges in his complaint that the parole board did not provide him meaningful consideration for parole.  Specifically, he alleges that the parole board relied on "undisclosed materials" that contained "false, misleading allegations regarding [his] offense" and "misinformation regarding his Christian Separatist theology."  (Compl. at ¶ 36.)  He alleges that the parole board did not provide him, either before or after the parole hearing, with copies of reports, documents, and other information it considered in making its parole determination, thereby depriving him of the opportunity to ensure the accuracy of the considered materials.  Damron also alleges that the parole board did not consider any of the documentation he provided in support of his suitability for parole.  Finally, Damron alleges that the parole board denied him meaningful consideration for parole through its application of an unwritten "first flop" policy to deny parole to first-time parole-eligible offenders convicted of a violent crime.  *Id*. at ¶ 55-56.

{¶ 5}  The parole board responded to Damron's declaratory-judgment complaint by filing a motion to dismiss pursuant to Civ.R. 12(B)(6), for failure to state a claim upon which relief could be granted.  The parole board argued Damron's complaint is based on mere speculation, without any underlying, supporting facts, which is insufficient to state a claim for deprivation of meaningful consideration for parole.

{¶ 6}  The trial court granted the parole board's motion to dismiss.  It concluded that Damron's complaint contained neither credible allegations of substantive errors in his parole record nor any nonspeculative facts supporting the existence or application of a "first flop" policy.  It further determined the parole board acted within its discretion when it refused to release or confirm communications it received in support of or in opposition to Damron's release.  Damron filed a timely appeal.

## II.  ASSIGNMENT OF ERROR

{¶ 7}  Damron asserts a single assignment of error, that the trial court abused its discretion in granting the parole board's motion to dismiss his declaratory-judgment complaint.

## III. ANALYSIS

{¶ 8}   In his sole assignment of error, Damron argues that the trial court erred in granting the parole board's motion to dismiss his complaint pursuant to Civ.R. 12(B)(6). Under Civ.R. 12(B)(6), a defendant may move the trial court to dismiss a complaint for failure to state a claim upon which relief can be granted.  A Civ.R. 12(B)(6) motion to dismiss tests the sufficiency of the complaint.  *O'Brien v. Univ. Community Tenants Union, Inc.*, 42 Ohio St.2d 242, 245 (1975).  When ruling on a Civ.R. 12(B)(6) motion, the trial court must construe the complaint in the light most favorable to the plaintiff, presume the truth of all factual allegations in the complaint, and make all reasonable inferences in favor of the plaintiff.  *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190, 192 (1988).  "The court need not, however, accept as true any unsupported and conclusory legal propositions advanced in the complaint."  *Bullard v. McDonalds*, 2021-Ohio-1505, ¶ 11 (10th Dist.), citing *Morrow v. Reminger & Reminger Co. LPA*, 2009-Ohio-2665, ¶ 7 (10th Dist.).  Dismissal under Civ.R. 12(B)(6) is appropriate only when it appears beyond doubt that the plaintiff can prove no set of facts entitling him to relief.  *State ex rel. Boyle v. Chambers-Smith*, 2024-Ohio-2777, ¶ 11; *Short v. Ohio Dept. of Job & Family Servs.*, 2025-Ohio-2604, ¶ 32, fn. 2 (10th Dist.). An appellate court reviews a decision on a Civ.R. 12(B)(6) motion to dismiss de novo. *Foreman v. Ohio Dept. of Rehab. & Corr.*, 2014-Ohio-2793, ¶ 9 (10th Dist.).

{¶ 9}   Damron seeks a declaratory judgment that the parole board denied him meaningful consideration for parole.  "A declaratory judgment action is a civil action [that] provides a remedy in addition to other legal and equitable remedies available." *One Energy Ents., LLC v. Ohio Dept. of Transp.*, 2019-Ohio-359, ¶ 30 (10th Dist.), citing *Victory Academy of Toledo v. Zelman*, 2008-Ohio-3561, ¶ 8 (10th Dist.). A party seeking a declaratory judgment must demonstrate: (1) a real controversy exists between the parties; (2) the controversy is justiciable; and (3) speedy relief is necessary to preserve the parties' rights.  *Burge v. Ohio Atty. Gen.*, 2011-Ohio-3997, ¶ 7 (10th Dist.).  For purposes of a declaratory judgment action, a "justiciable issue" requires the existence of a legal interest or right, and a "real controversy" exists when there is a " ' "genuine dispute between parties having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." ' "  *JBK Ventures, Inc. v. Ohio Dept. of Pub. Safety*, 2021-Ohio-2046, ¶ 6, quoting *Town Ctrs. Ltd. Partnership v. Ohio State Atty. Gen.*, 2000 Ohio App.

LEXIS 1457, *12 (10th Dist. Apr. 4, 2000), quoting *Wagner v. Cleveland*, 62 Ohio App.3d 8, 13 (8th Dist. 1988). A trial court properly dismisses a declaratory judgment action when there is no real controversy or justiciable issue between the parties. *Burge* at ¶ 7.

{¶ 10} "A prisoner has no constitutional or statutory right to parole." *State ex rel. Keith v. Ohio Adult Parole Auth.*, 2014-Ohio-4270, ¶ 19, citing *State ex rel. Henderson v. Ohio Dept. of Rehab. & Corr.*, 1998-Ohio-631, 81 Ohio St.3d 267, 268. Thus, "a prisoner who is denied parole is not deprived of liberty as long as state law makes the parole decision discretionary." *Id.* Because the Ohio Adult Parole Authority has "wide-ranging discretion in parole matters," *Layne v. Ohio Adult Parole Auth.*, 2002-Ohio-6719, ¶ 28, "the denial of parole cannot constitute a deprivation of liberty or denial of due process." *Phelps v. Ohio Parole Bd.*, 2023-Ohio-284, ¶ 13 (10th Dist.). Nevertheless, the Supreme Court of Ohio has recognized that the "Revised Code creates an inherent expectation 'that a criminal offender will receive *meaningful* consideration for parole.' " (Emphasis added.) *State ex rel. Bailey v. Ohio Parole Bd.*, 2017-Ohio-9202, ¶ 10, quoting *Layne* at ¶ 27. "An inmate is not afforded meaningful parole consideration if the parole authority bases its decision on information in an inmate's file that is substantively incorrect." *Id.*, citing *Keith* at ¶ 23. This court has described *Keith* as requiring a court "to determine whether an inmate has alleged a 'substantive error' in the record that precluded meaningful consideration of his release." *State ex rel. Edwards v. Ohio Dept. of Rehab. & Corr.*, 2020-Ohio-2799, ¶ 15 (10th Dist.), citing *State ex rel. Brust v. Chambers-Smith*, 2019-Ohio-857, ¶ 9.

{¶ 11} On appeal, Damron argues that the trial court erred by concluding that he failed to state a claim for declaratory judgment upon which relief could be granted. Contrary to the trial court's decision, he contends he sufficiently alleged in his complaint that the parole board denied him meaningful consideration for parole when it did not provide him with the materials the parole board considered in making its determination, relied on inaccurate information, and applied a "first flop" policy to predetermine the denial of parole. We disagree.

{¶ 12} Damron first argues, as he alleged in his complaint, that the parole board did not provide him with copies of all the documents and information the parole board considered in denying him parole. According to his complaint, Damron made a public records request for copies of the materials the parole board considered and relied on in its

parole determination. He alleges that ODRC produced some of those materials but withheld others, "including but not limited to victim impact statements, correspondence between [board] members, internal memorand[a], notes, and vote sheets," on the basis that they were not public records or that Damron's request was not specific enough. (Compl. at ¶ 39.) Although he does not know what materials the parole board considered, Damron speculatively alleges that the undisclosed materials "contained false, misleading allegations regarding [his] offense" and "misinformation regarding his Christian Separatist theology." *Id.* at ¶ 36.

{¶ 13} An inmate has no clear legal right to review his parole record prior to a parole hearing. *Moore v. Ohio Parole Bd.*, 2023-Ohio-3651, ¶ 14, citing *Brust* at ¶ 21. Nor is the parole board "required to conduct an extensive investigation in every prisoner's case to ensure the accuracy of its files." *Brust* at ¶ 21, citing *Keith* at ¶ 27. Instead, ODRC policy permits an inmate to respond to information discussed at his parole hearing and to submit additional pertinent information verbally or in writing. *Id.* *See also* Ohio Department of Rehabilitation & Correction, *PAROLE BOARD RELEASE CONSIDERATION HEARINGS* (EFFECTIVE 7/8/2024) Policy No. 105-PBD-03, at 6, available at https://drc.ohio.gov/about/resource/policies-and-procedures (Accessed October 29, 2025) [https://perma.cc/9P4U-56SW]. Damron does not allege in his complaint that he was denied the right to respond to information discussed at his parole hearing or to submit additional pertinent information following the hearing. Like the appellant in *Konkel v. Ohio Parole Bd.*, 2025-Ohio-1071 (10th Dist.), Damron instead argues that he should be able to obtain all the documents the parole board considered so he may determine whether the parole board relied on incorrect information, but as we stated there, "[t]his court has previously rejected this argument, holding 'an inmate seeking parole does not have such a right.'" *Id.* at ¶ 22, quoting *Moore v. Ohio Parole Bd.*, 2023-Ohio-3651, ¶ 16 (10th Dist.), citing *Brust* at ¶ 21, citing *Keith* at ¶ 27.

{¶ 14} The parole board may not rely on information it knows or has reason to know is inaccurate. *Keith* at ¶ 26. Thus, "where there are credible allegations, supported by evidence, that the materials relied on at a parole hearing were substantively inaccurate, the [parole board] has an obligation to investigate and correct any significant errors in the record of the prisoner." *Id.* at ¶ 28. Damron does not identify any erroneous information

in the materials he has been provided. Nor does his complaint identify any withheld materials, let alone withheld materials containing inaccurate information, with specificity. Instead, he merely speculates that the parole board must have relied on incorrect information when it denied him parole.

{¶ 15} Damron has not alleged the parole board failed to consider the factors it was required to consider under Adm.Code 5120:1-1-07. Adm.Code 5120:1-1-07(A) permits the parole board to deny parole for one or more of the following reasons:

> (1) There is substantial reason to believe that the inmate will engage in further criminal conduct, or that the inmate will not conform to such conditions of release as may be established under rule 5120:1-1-12 of the Administrative Code;
>
> (2) There is substantial reason to believe that as the unique factors of the offense of conviction significantly outweigh the inmate's rehabilitative efforts, the release of the inmate into society would create undue risk to public safety and/or would not further the interest of justice nor be consistent with the welfare and security of society;
>
> (3) There is substantial reason to believe that due to serious infractions of rule 5120-9-06 of the Administrative Code, the release of the inmate would not act as a deterrent to the inmate or to other institutionalized inmates from violating institutional rules and regulations;
>
> (4) There is need for additional information upon which to make a release decision.

Here, the parole board determined that the information relevant to Damron's potential release on parole supported the reasons for continued incarceration stated in Adm.Code 5120:1-1-07(A)(1), (2), and (3). Although Damron disagrees with the parole board's decision, he has not alleged any facts indicating that there was a factual error in the decision or that the parole board relied on substantively incorrect information in making its determination denying him parole. His conclusory allegation that the parole board considered inaccurate or misleading reports, documents, or information, without accompanying factual assertions, is insufficient to state a claim for denial of meaningful consideration. *See Kunkel* at ¶ 22.

{¶ 16} Damron next alleges in his complaint that the parole board denied him meaningful consideration for parole because it applied an alleged, unwritten policy to deny

parole to violent offenders the first time they are eligible for parole. This court rejected the same argument in *Moore*. We stated, "Moore's reference to the existence of a 'first flop' policy represents his disagreement with the board's weighing of the parole factors, but it does not create a set of facts that could establish he was denied meaningful parole." *Moore*, 2023-Ohio-3651, at ¶ 20. The same reasoning applies here. As in *Moore*, the parole board's decision attached to Damron's complaint demonstrates that the parole board considered circumstances unique to Damron's conviction and Damron's efforts at rehabilitation. Upon weighing those factors, the parole board determined that Damron was not suitable for parole. That weighing process " 'is precisely the point at which the parole board exercises its discretion,' " and " '[s]o long as each assessment rests on correct facts and falls within permissible guidelines, an inmate has no basis to challenge the [parole] decision.' " *Id.* at ¶ 19, quoting *Bailey* at ¶ 12. Moore's unsupported, conclusory allegations of the existence and use of a "first flop" policy did not require the denial of the parole board's motion to dismiss, as a court need not accept as true unsupported and conclusory legal propositions stated in a complaint. *See id.* at ¶ 21, citing *Colvin v. Ctr. for Dev. & Property Solutions, L.L.C.*, 2021-Ohio-4392, ¶ 8.

{¶ 17} Construing Damron's complaint in the light most favorable to Damron, we conclude that it contains no nonspeculative facts that the parole board denied him meaningful consideration for parole by failing to produce copies of the materials upon which the parole board relied, by basing its decision on substantively incorrect information, or by basing its decision on an unwritten "first flop" policy. Without sufficient operative facts to substantiate his claim, we agree with the trial court that Damron has failed to state a claim for declaratory judgment based on the denial of meaningful consideration for parole. We therefore overrule Damron's sole assignment of error.

## IV. CONCLUSION

{¶ 18} Having concluded upon de novo review that Damron's complaint does not

state a claim for declaratory judgment upon which relief can be granted, we affirm the judgment of the Franklin County Court of Common Pleas dismissing Damron's complaint.

*Judgment affirmed.*

BEATTY BLUNT and LELAND, JJ., concur.

_____